## PELTON v. COOKE.

### No. 14918.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 20, 1948.

Rehearing Denied March 19, 1948.

Clark, Craik, Burns & Weddell, of Fort Worth, for appellant.

Clay Cooke, of Fort Worth, for appellee.

SPEER, Justice.

Appellant, H. E. Pelton, as plaintiff below, sued appellee, Clay Cooke, in a dis-

trict court of Gregg County and upon Cooke's plea of privilege, the suit was transferred to the district court of Tarrant County where appellant amended his pleadings.

By the amended petition appellant sought to recover of appellee $2735, and perhaps more, since an accounting between the two is prayed for. The trial pleadings of appellant base his claims upon (1) a written contract dated August 19, 1937, between himself, Walter C. Linden, Jr., and appellee; the substance of that contract is that Linden, a practicing attorney, had some prospective litigation and needed some one to make certain investigations of a non-legal nature, and also an experienced attorney to aid in the trial of the proposed litigation. By the terms of the contract appellant was to make the needed investigations and appellee was to assist Linden in the trials. Appellant was to have certain traveling expenses and one-third of such sums as the two attorneys should earn in the way of fees or court allowances over and above their respective actual expenses. (2) A somewhat similar contract of date July 20, 1939, made between "Reliable Collection Agency" (composed of Hamilton and Zent) and appellee Cooke; appellant alleging that he thereafter acquired the rights of Hamilton and Zent. To his amended petition appellant attached, as exhibits, copies of the two contracts and an assignment by Hamilton and Zent of a one-half interest in their contract with appellee Cooke. Another exhibit is an itemized expense account by appellant, showing the dates on which the expenses were incurred and allowing certain credits paid thereon. The exhibit of expenses begins with 7/28/'39 and ends with January 1 and 2, 1945. Appellant charged that appellee had collected at various times, through allowances upon his applications to various courts, the items of expenses incurred by appellant and sought recovery thereof. The substance of his prayer is that appellee be required to make an accounting of all such collections and that appellant recover such amounts as the accounting showed him entitled to. Also that appellant recover of appellee the further sum of $1711.11 to cover actual expenses incurred by appellant in making investigations in the various lawsuits in accordance with said contracts.

Appellee filed a plea in abatement based upon res judicata and a motion to dismiss appellant's suit. In so far as is necessary to state here, these pleas consisted of the filing and prosecuting to effect six suits, based principally upon matters involved in litigation with the W. C. Turnbow Petroleum Corp., operating in the East Texas oil field. Two of these suits were class-suits in Gregg County; the Turnbow Corporation then filed a petition in bankruptcy, and two suits were filed in Federal Court in behalf of the stockholders; the last two suits were prosecuted to effect and the court allowed to appellee as a fee and to cover expenses of himself and appellant the sum of $51,000, apportioned $36,000 to appellee and $15,000 to appellant, and ordered the newly formed Nevada Oil Co. (a corporation), holding the assets of the Turnbow Corporation for the latter's stockholders, to pay from the assets the allowances so made. Appellee also plead in abatement a suit in the 48th District Court of Tarrant County filed by Hamilton & Zent against appellant and the Nevada Oil Co., whose president and attorney of record was Clay Cooke, the appellee, and other parties alleged to be interested in the subject matter; he also pleaded the judgment entered in that case on November 26, 1945. He pleaded performance of the last mentioned judgment, and therefore res judicata of all matters involved in the instant suit, and prayed that the suit be dismissed.

Appellant filed no reply to the plea in abatement and motion to dismiss. The plea and motion came on for hearing. The movant appellee properly assumed the burden of proof. He offered in evidence about 125 pages of documentary evidence, including the pleadings and judgments in the cases pleaded and much other matter leading up to and pertaining to each of those suits. Appellant made no objections to the testimony offered. Appellant offered in evidence a contract of settlement between Hamilton and Zent on one side and appellant Pelton on the other, dated Au-

gust 8, 1941, releasing to Pelton all of their interest in certain contracts theretofore had with appellee Cooke; also a letter from appellant dated August 8, 1941, to W. L. Zent, promising to pay to Zent $300 out of the first moneys received by him from said contracts, and also a check dated March 3, 1939, from W. C. Linden, Jr., to appellant for $523.92, having written on its face this language: "In total and full settlement of all claims by virtue of the W. C. Turnbow litigation under the terms of contract between Cooke and Linden and contract between Cooke, Pelton and Linden dated Aug. 19, 1937."

The evidence was heard by the trial court without a jury on June 9, 1947, and on June 23, 1947, rendered his judgment, in short form without findings of any specific facts therein, sustaining the pleas of abatement and res judicata, and dismissing appellant's case. No exception to the judgment was then taken, but on July 21, 1947 appellant filed an amended motion for new trial. The amended motion was heard by the court on August 19, 1947, and on September 3, 1947, the court rendered judgment overruling it, to which order the appellant excepted and gave notice of and thereafter timely perfected his appeal.

At the inception of this opinion we are confronted with a motion timely filed by appellee Cooke to strike out, not to consider and return to the trial court a certain document and volume filed in this court by appellant Pelton, purporting to be a "Bill of Exception" filed in the trial court but never incorporated into either the transcript or statement of facts. Appellant filed a lengthy reply to the motion; the controversy was called to the attention of this court by timely submission. The appeal on its merits was due for submission at an early date and we advised the parties that the motion would be considered in connection with the appeal.

It is quite apparent that the 184 page volume embraced within the Bill of Exception was filed in the district court on November 1, 1947, after appellant had perfected this appeal by filing his bond on September 30, 1947. The transcript duly certified by the clerk and the statement of facts, properly approved by counsel for both parties, were timely filed in this court. The record does not disclose when nor under what circumstances the volume of the "Bill of Exception" was procured from the clerk of the trial court but apparently was presented to the clerk of this court along with the transcript and statement of facts and all were filed at the same time.

The purpose of an exception referable to the admission or rejection of testimony is to apprise the trial court the reason or reasons why the complaining party deems the ruling erroneous; the bill of exception, under our practice, is to present to the appellate court a true recitation of the matters presented to the trial court and the manner in which that court acted upon them. As a general rule the bill of exception must disclose that the trial court acted upon the matters complained of in a manner which the appellant believed to be erroneous, and in the absence of qualifications by the trial court or in instances of a bystanders' bill, it must have the absolute approval of the court. We fail to find in the volume submitted to us any contention that any of the testimony contained therein was tendered by appellant upon the trial of the case and of course it is not claimed that it was improperly rejected.

The record from which this appeal must be determined consists of the transcript and statement of facts. Rule 371, Texas Rules of Civil Procedure. It does not appear that an order was made by the trial court under Rule 379 that any original papers should be transmitted from that to this court for review. Compliance with this rule is the only authority we have for considering such evidence. Food Machinery Corp. v. Moon, Tex.Civ.App., 165 S.W. 2d 773.

Under Rule 428 if it should be made to appear to this court that something material in the disposition of the appeal has been omitted from the record, we may require a supplemental transcript. We have carefully read all that is contained in the Bill of Exception volume and find nothing therein which was offered upon the trial of the case and rejected by the court;

and for this reason we cannot consider the bill of exception nor its contents as evidence upon the trial. If all that is contained in the volume of the Bill of Exception had been timely and truly presented to us in an application to amend the transcript, for obvious reasons we could not have sustained such a motion.

The statement of facts in this case consists of 126 pages of documentary evidence, and there were no objections made by appellant to any part of it, nor did he attempt to offer any evidence which was rejected by the court.

The trial to the court was on June 9, 1947, and on the same day the court entered his order and judgment sustaining appellee's (defendant's) plea in abatement and motion to dismiss appellant's (plaintiff's) suit.

Appellant timely filed a motion for new trial and it was overruled September 3, 1947, at which time exceptions were taken and notice of appeal given.

As disclosed by the "Bill of Exception" volume, appellant procured the consent of the trial court to introduce certain evidence on July 2, 1947, upon "A hearing on the application of the Plaintiff (appellant) to make a Bill of Exception; it is not on the merits." The transcript of the evidence so offered is certified by the official court reporter as being "A true and correct transcript of all the proceedings had in the matter of completing the Plaintiff's Bill of Exception taken in this cause, heard before the Honorable Robert B. Young, Judge of said Court (48th District), on July 2, 1947." As above pointed out the document was filed in the District Court on November 1, 1947.

■ Appellant argues against the sustaining of appellee's motion to strike that the volume labeled "Bill of Exception" is in truth and in fact a part of the transcript irrespective of how it is "labeled" and because appellee incorporated much immaterial matter in it during the hearing, the expense of having it copied into the transcript would be excessive and almost prohibitive to appellant, and therefore this court should consider it as though a part of the transcript. We are not in accord with this

contention. Ample provisions are made in our Court Rules for the protection of one who seeks to appeal and of necessity must procure from the trial court a transcript of the proceedings had there, and if the opposing party insists upon inserting immaterial matters therein, the appellate courts have a broad discretion in taxing the costs to meet the ends of justice. Rule 448.

The motion of appellee to strike the offending document, referred to as appellant's "Bill of Exception" will be sustained and the whole volume will be ordered returned to the clerk of the trial court from which it came.

Appellant assigns six points of error. In substance, point one asserts that the judgment in Cox et al. v. Turnbow et al. (No. 347 Civil, Federal Court) was not res judicata of his rights in this case because the undisputed evidence shows that the allowance of expenses to appellant there made was to re-imburse him for expenses incurred and not for funds collected by defendant (Cooke) belonging to appellant and was specifically without prejudice to plaintiff's claim for moneys expended and advanced by him. Points two and three are similar to number one except that it has reference to a judgment rendered by the district court of Gregg County in Kelley et al. v. Bell General Pipe Line Company. Points four and five assert that the judgment in the 48th District Court of Tarrant County, styled Hamilton & Zent v. Pelton et al. (other defendants were Nevada Oil Co., whose president was appellee Cooke, Martin, Moore & Brewster and Weldon Bradley), was not res judicata of the matters in issue in the instant suit and for the further reason defendant Cooke was not a party to said suit. And point six complains because the case at bar had been placed on the jury docket for trial and the court erroneously heard and sustained appellee's plea in abatement and dismissed the case, thus depriving appellant of his right of trial by jury.

It would unnecessarily extend this opinion to attempt to discuss the assigned errors in detail. As we view the record before us we may properly dispose of this appeal

by a determination if the evidence supports the judgment entered and this involves whether or not the judgments entered in Federal Court No. 347–Civil, Cox et al. v. Turnbow et al., and No. 50482–A, Hamilton & Zent v. Pelton et al., in the 48th District Court, Tarrant County, constitute res judicata in the case before us.

Since we have sustained the motion of appellee to strike from the record before us the volume denominated appellant's "Bill of Exception", as indicated above, we have before us only the testimony as disclosed by the statement of facts.

By reference to the statement of facts, we find the trial court had before him, along with many matters ancillary thereto, the following:

(1) A contract dated August 19, 1937, between Walter C. Linden, Jr., Clay Cooke and H. E. Pelton, the substance of which is that Pelton was to make certain investigation of a non-legal nature in connection with the prosecution of some suits pending and contemplated by Linden, an attorney, and Linden desired Cooke to assist in the trial of said cases; that for Pelton's services he was to receive certain actual expenses incurred in an amount when added thereto would equal to one-third of the amount earned by Cooke and Pelton, as attorneys in said litigation, above their actual expenses incurred therein.

(2) A contract dated July 1, 1939, between H. E. Pelton, as one party, and J. E. Hamilton and W. L. Zent, jointly, as the other parties, wherein the parties agreed that in making an investigation for the benefit of the stockholders in W. C. Turnbow Petroleum Corporation, they shall bear the expenses incurred thereby jointly and shall divide the proceeds derived from their efforts equally. They each agreed that neither would make settlement nor employ any one else in connection with said transaction without the consent of all.

(3) A contract dated July 20, 1939, between John E. Hamilton and W. L. Zent, doing business as Reliable Collection Agency, to employ Clay Cooke as attorney to institute and prosecute such suit or suits as may be necessary in the State or Federal courts for the protection of stockholders of said Turnbow Petroleum Corporation. Hamilton and Zent obligated themselves to make all necessary investigation and develop the evidence necessary and requisite to said suit or suits at their own expense, and Cooke obligated himself to endeavor to procure from the court or courts an allowance to be paid out of the property recovered to cover such expenses and Cooke agreed that said allowance should be at least one-third of the total amount allowed him as fees in said causes.

(4) A contract dated September 21, 1939, between Pelton, as first party, and Hamilton and Zent, as second parties; the terms of this instrument are substantially the same as the contract above mentioned between the same parties, dated July 1, 1939.

(5) A letter from appellee Cooke to appellant Pelton, dated October 21, 1944, in which the writer advised Pelton that his contract with the Reliable Collection Agency, dated July 20, 1939 (hereinabove referred to), had been abandoned by the Agency and he understood that the contract had been assigned to Pelton and that he (Pelton) had been endeavoring to carry out the obligations thereof. The writer added that he had advanced one-half the expenses, all of which were to have been advanced by the Agency. He assured Pelton of his appreciation of Pelton's valuable service rendered and assured him that he would be reimbursed for his expenses incurred to the extent of one-third of any money or property received by the writer over and above his own actual expenses.

(6) A judgment dated February 28, 1945, in Federal Court, No. 347 Civil, styled George A. Cox et al. v. W. C. Turnbow et al., in which the court decreed that a total allowance of $51,000 was made to Cooke and Pelton for all of the services rendered by them to that date to the stockholders, same to be paid out of the proceeds and assets held by Nevada Oil Company for the use and benefit of the stockholders of the Turnbow Petroleum Corporation; that said total allowance to be so paid was apportioned $36,000 to appellee Cooke and $15,000 to appellant Pelton. The judgment concludes with this language: "It is further ordered, adjudged

and decreed, that the foregoing allowances are in full satisfaction of all services rendered by either or both of said parties in this case and in all related litigation mentioned or described in said petition, to this date."

(7) The petition of Hamilton and Zent v. H. E. Pelton et al. (the other parties being Nevada Oil Company, whose president was Clay Cooke, Martin, Moore & Brewster, and Weldon Bradley), being Cause No. 50482-A in the 48th District Court of Tarrant County, Texas, in which suit the plaintiffs sought to recover of Pelton a one-half interest in the award of the $15,000 expenses allowed to him by the Federal Court in Cause No. 347 Civil, above referred to, under and by virtue of the contracts between Hamilton & Zent and Pelton, above pointed out. There were allegations that Nevada Oil Company was obligated to make the payment allowed by the Federal Court and that the other named defendants claimed some right, title and interest therein.

(8) The amended answer of Nevada Oil Company in the suit in Cause No. 50482-A, last referred to, in which it was pleaded at great length that Nevada Oil Company was a stakeholder and trustee of the assets of the Turnbow Petroleum Corporation for the benefit of the stockholders of the last named corporation; that much litigation had been had growing out of the rights of said stockholders and additional and continuous litigation was being threatened by the parties to the suit; much of the purported history of the several controversies was delineated in the petition, including the judgment in the Federal Court in Cause No. 347 Civil, wherein the award of $51,000 was made to appellant and appellee and apportioned as therein stated. There were allegations that notwithstanding the award of $15,000 expenses allowed to Pelton by the said Federal Court judgment, Nevada Oil Company alleged that it had information that Hamilton and Zent had an interest therein and that Pelton had made certain assignments of portions of his part thereof to the other defendants, Martin, Moore & Brewster and Bradley. Its prayer was to the effect that the court definitely and finally adjudicate the conflicting rights among the plaintiffs and defendants and that "all parties hereto, their servants, agents and attorneys, be enjoined from prosecuting or instituting any other or further suits or court proceedings involving compensation for services rendered in any court, State or Federal, in connection with any of said litigation involving the said W. C. Turnbow and the said W. C. Turnbow Petroleum Corporation, and that the decree herein give specific direction to said stakeholder as to the parties to whom said fund should be paid as and when same accrues monthly."

(9) An agreement for entry of a judgment in cause No. 50482-A, 48th District Court of Tarrant County, Texas, dated November 19, 1945, signed by Pelton, Martin, Moore & Brewster, J. W. Bradley, John E. Hamilton, W. L. Zent and Marvin H. Brown, Jr., by the terms of the agreement a distribution was made of said $15,000 allowance to Pelton among the other named defendants, the agreement further reciting "and that same shall be and is a full and complete adjustment and settlement of all matters in controversy in the said suit of John E. Hamilton et al. against H. E. Pelton and any and all claims of any of the parties growing out of their connection with the litigation in State and Federal Courts involving the Nevada Oil Company or Clay Cooke, its attorney, or the stockholders of Protective Committee of the W. C. Turnbow Petroleum Corporation * * *." The agreement also provides that the court shall enjoin in said judgment each and all the parties from claiming or instituting suit for any further claims growing out of the suits against the Turnbow Petroleum Corporation and all related litigation, whether in the State or Federal courts and whether under contract with the attorney for the stockholders or with the stockholders themselves.

(10) The judgment of the 48th District Court in cause No. 50482-A, John E. Hamilton et al. v. H. E. Pelton et al., entered on the 26th day of November, 1945; the provisions of the judgment are in accord

with the agreement of the parties last above referred to.

"In keeping with the terms of the agreement between the parties last above referred to, the court ordered its writ of injunction to be issued in this language: "It is further ordered, adjudged and decreed that each and all of the parties hereto be and they are each hereby perpetually enjoined from claiming any other or further right or interest in said $15,000.00 fund or in any award or contract for any service of any character rendered in connection with the said litigation involving the W. C. Turnbow Petroleum Corporation and the said W. C. Turnbow and all related litigation, whether in the State or Federal courts and whether under contract with the attorney for the stockholders involved therein or with the stockholders themselves * * * and from instituting any other or further suits or proceedings in any court in pursuance of such claims to the interest of any other person."

It will be noted that by appellant's first point of error he claims that the undisputed evidence in the case disclosed that the allowance of $15,000 made to him by the Federal Court in Cause No. 347 Civil provided specifically that it was without prejudice to plaintiff's claim for money expended and advanced by him. We note no such provision in the judgment to which we have previously referred by number.

By points two and three, appellant contends that a judgment in Kelley et al. v. Bell General Pipe Line Company does not amount to res judicata of his present law suit. Nothing pertaining to the mentioned case appears in the statement of fact and it becomes unnecessary for us to discuss it in any form.

We think the determining factor in this case is the institution and disposition made in the 48th District Court, Tarrant County, in the case of Hamilton and Zent v. Pelton et al., No. 50482–A. We have already given the substance of the matters involved in that suit and the disposition made of it and the permanent injunction issued therein based upon the agreement of the parties. It will be noted that while appellee Cooke was not named in the pleadings as a party to the litigation, yet it was disclosed that he was president of the defendant, Nevada Oil Company, and was its attorney of record, and the injunctive relief covered all officers, agents, representatives and attorneys. Under all of the facts and circumstances of this long drawn out controversy involving so many law suits and the personal interests of appellant and appellee, as disclosed by the several proceedings already referred to by us, we are unwilling to say that appellee Cooke was not a party to the transactions had in connection with the various attempts by the court to terminate this very exceedingly vexatious piece of litigation. His status in this whole matter is quite analogous to the rules of law laid down in 26 Tex.Jur. 225, sec. 457.

As we have previously pointed out, the appellant introduced no testimony upon the trial of this case except the two instruments referred to in the early part of this discussion, neither of which had any material bearing upon whether or not appellee's plea in abatement, grounded upon res judicata, should be sustained and the suit dismissed. We believe there was sufficient evidence of probative value presented to the trial court to support the judgment entered. It is unnecessary to cite authorities to the effect that when there is some substantial testimony offered in support of a judgment and none is offered to the contrary the judgment will not be disturbed.

We conclude that all points of error should be overruled and the judgment of the trial court sustained and it is therefore the order of this court that the judgment of the trial court be affirmed.

Affirmed.