Gerald E. GILES, et ux, Appellants,

v.

Ronald R. CARDENAS, et ux., Appellees.

No. 04–84–00061–CV.

Court of Appeals of Texas,
San Antonio.

April 17, 1985.

Rehearing Denied Oct. 1, 1985.

Don Killingsworth, San Antonio, for appellants.

Jeb C. Sanford, San Antonio, for appellees.

Before BUTTS, TIJERINA and BISSETT,* JJ.

## OPINION

BISSETT, Justice (Assigned).

This is a suit to enforce restrictive covenants in a residential subdivision. Ronald R. Cardenas and Irene J. Cardenas filed suit against Gerald E. Giles and Jacquelyn Giles seeking mandatory injunctive relief and attorney's fees. Trial was to the court. Judgment was rendered on October 27, 1983, which mandatorily ordered Gerald Giles and Jacquelyn Giles, defendants, to remove a portion of a fence on their property, and which permanently enjoined them from erecting any structures or fences beyond the side street building setback line. The judgment further awarded attorney's fees to plaintiffs, hereinafter referred to as "appellees." Defendants, hereinafter referred to as "appellants," have timely perfected an appeal from the judgment.

We first dispose of appellants' third point of error, wherein they claim that the trial court failed to accord them a full, fair and impartial trial. Specifically, they contend that the trial court did not allow them "the opportunity to present their evidence at the trial with regard to any defenses in rebuttal to the evidence ... put forth by the plaintiffs (appellees) in this cause."

Appellants did not present any evidence at the trial of this case. The evidence which they say they were not given the opportunity to present is the evidence which they presented in their purported bill of exceptions. The record conclusively shows that neither of the appellants were called to testify at the trial, although each was present throughout the trial. Appellants formally and at the proper times "rested" and "closed."

There is nothing in the record that indicates that the trial court prevented appellants from offering evidence in their behalf

or that the trial court did not afford them an opportunity to present evidence. There is no evidence that the trial court coerced or required appellants to rest their case or close prematurely. Appellants did not move for a continuance, nor did they seek a postponement of trial in order to have their witnesses present to offer testimony.

If a litigant rests his case and closes without presenting evidence in support of his position, the failure to present evidence constitutes a waiver. *Parkview General Hospital, Inc. v. Waco Construction, Inc.,* 531 S.W.2d 224 (Tex.Civ.App.—Corpus Christi 1975, no writ). Where evidence has not been offered, there can be no refusal to admit evidence. *Hibbler v. Walker,* 593 S.W.2d 398 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). In the present case, appellants had an opportunity to present evidence in support of the affirmative defenses raised in their pleadings. No error is shown. Appellants were accorded a full, fair and impartial trial. Appellants' third point is overruled.

Ray Ellison Homes, Inc., the original owner of Babcock Place Subdivision, in San Antonio, Texas, subjected the subdivision to certain "Covenants, Conditions and Restrictions" by an instrument which it executed on April 17, 1978. These Covenants, Conditions and Restrictions, hereinafter called "Restrictions," were filed for record in the Official Public Records of Real Property of Bexar County, Texas, on April 26, 1978. They, along with a plat of the subdivision, were forthwith duly recorded in the Deed and Plat Records of Bexar County, Texas.

Appellees contracted with Ray Ellison Homes, Inc., to purchase a house on Lot 23, Block 25 NCB 16770, Babcock Place Subdivision, known as 12358 Capeswood Drive, San Antonio, Texas. They moved into the house in August, 1980. They received a deed from Ray Ellison Homes, Inc., which was dated October 8, 1980. Appellants are the owners of Lot 22, Block 25, NCB 16770,

---

* Assigned to this case by the Chief Justice of the Supreme Court of Texas as authorized pursuant to Paragraph (d) of Article 1812, Texas Revised Civil Statutes as amended by H.B. 2244 (Acts 1983, 68th Leg., p. 1912, Ch. 354, Sec. 1, effective June 16, 1983).

in the Subdivision, which is a corner lot located at the corner of Cloverwood and Capeswood Drives. Appellants' lot was conveyed to them by Ray Ellison Homes, Inc., by deed dated subsequent to the date of appellees' deed. Lots 22 and 23 are adjoining lots. The deeds to appellants and appellees, as well as all deeds executed by Ray Ellison Homes, Inc., which conveyed other lots in the subdivision to third parties, contained the following language:

This conveyance is made subject to restrictions and easements, if any, of record affecting the hereinbefore described property.

Paragraph 13 of the Restrictions provides:

No fence, wall or hedge on any lot shall be built forward of the front building setback line of the respective house, *nor shall any fence*, wall or hedge *on any corner lot be built forward of the side street building setback line*, except such as may be part of the house as originally constructed on said lot. [Emphasis added]

Paragraph 7 of the Restrictions, in pertinent part, provides:

*No structure shall be altered*, or any structure *erected or placed*, other than the original subdivision *until its plans, specifications and plot plan specifically showing the proposed location of such structure have been approved in writing* [by the Architectural Committee]. [Emphasis added]

Paragraph 23 of the Restrictions provides:

No fence, wall, hedge or shrub planting which obstructs site lines at elevations between 2 and 6 feet above the roadway shall be placed or permitted to remain on any corner lot within the triangular area formed by the street property lines and a line connecting them at points 25 feet from the intersection of the street lines, or in the case of a rounded property corner, from the intersection of the street property lines extended....

The side street building setback line for appellants' property is thirty feet from Capeswood Street or twenty feet from their property line along Capeswood Street.

Appellants' fence, as it was constructed, is twenty feet in front of the building setback line, along their side yard property line, or ten feet from the street.

On or about January 24, 1981, Ray Ellison Homes, Inc., commenced the construction of a fence on Lot 22 (which, apparently, was conveyed to appellants on February 27, 1981). The construction was in front of the side street building setback line. Holes were dug and fence posts were "cemented in." Appellants notified representatives of Ray Ellison Homes, Inc., that the fence was being built in front of the side street building setback line and in violation of paragraphs 7, 13, and 23 of the Restrictions. On or about January 30, 1981, construction crews for Ray Ellison Homes, Inc., removed the fence posts that had been placed in front of the side street building setback line. Following appellants' purchase of Lot 22, they erected a fence on their property ten feet in front of the side street building setback line. Thereafter, the fence was removed by appellants, and another fence was subsequently built by them on their property twenty feet in front of the side street building setback line, on appellants' side yard property line.

The fence, about which complaint was made, was built by appellants in March, 1981. At appellees' request, James D. Bradley, director of Customer Relations for Ray Ellison Homes, Inc., wrote to appellants on or about April 17, 1981, and informed them that the fence was in violation of Paragraphs 13 and 23 of the subdivision's Restrictions. He also notified them that plans and specifications for building a fence by a home owner must be submitted to the architectural department at Ray Ellison Homes, Inc., for its consideration and approval prior to the building of a fence. On or about April 21, 1981, appellants wrote to Ray Ellison Homes, Inc., and requested approval of the location of the fence (which had already been built at that time). Ken Gancarczyk, Director of Architecture and Design for Ray Ellison Homes, Inc., wrote to appellants on or about July 17, 1981, informing them that their request

for approval of the location of the fence has been denied.

On or about September 18, 1981, Gregory B. Grigsby of the law firm of Johnson & Christopher, attorneys for Ray Ellison Homes, Inc., wrote to appellants and informed them that the fence they had built on Lot 22 extended in front of the side street building setback line. The letter further informed them that the fence was in violation of the Restrictions.

Appellees' attorney wrote appellants in January, 1982, and again in February, 1982, wherein he requested that the fence be removed. The fence was not removed, and suit was filed.

On January 1, 1984, appellants purported to perfect a bill of exceptions addressed "to the failure of the Court to allow the defendants, Gerald E. Giles and wife, Jacquelyn Giles, the opportunity to present their evidence with regard to any defenses in rebuttal to the evidence ... put forth by plaintiffs in this cause." It was opposed by appellees who argued that

> defendants have waived their right to a bill of exceptions in that judgment has already been entered in this cause, and that no recourse was made either prior to the judge's judgment or during trial for the preparation of a bill of review and that no offer of testimony was made by defendants at trial.

Appellants then called several witnesses whose testimony, had the same been before the trial court at the time of trial, would have created several issues of fact.

As already held by us, the trial judge did not fail to give appellants an opportunity to present their evidence at the trial of the case. The failure to present such evidence was due to the fault of appellants' trial counsel and no one else.

■ A bill of exceptions is not evidence, but is a statement of an occurrence in the trial court to which an exception is taken. STATE BAR OF TEXAS, APPELLATE PROCEDURE IN TEXAS § 11.3 (2d ed. 1971).

In *Foreman v. Texas Employers' Insurance Association,* 150 Tex. 468, 241 S.W.2d 977, 979 (1951), the court said:

> A bill of exceptions is not evidence from which inferences of fact are to be or may be drawn. It is a statement of an incident or of proceedings in the trial court on account of which exception is taken by one of the parties.

The question before the court in *Pelton v. Cooke,* 209 S.W.2d 398 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.) was virtually identical to the questions in the case at bar. In *Pelton,* evidence was heard by the trial court without a jury on two separate days over a period of approximately two weeks. Appellant, defendant in the trial court, offered no evidence and made no objections during trial. Following trial, judgment was rendered for the plaintiff, appellee therein. The court, at pages 400–401, said:

> We have carefully read all that is contained in the Bill of Exception volume and find nothing therein which was offered upon the trial of the case and rejected by the court; and for this reason we cannot consider the bill of exception nor its contents as evidence upon the trial.

Here, appellants did not offer any evidence in support of their defenses at trial. They made no objection to the introduction of evidence by appellees. There was no refusal by the trial court to admit evidence offered by appellants, because appellants never offered any evidence. Hence, there is no "occurrence" or "action" of the trial court of which to complain by bill of exceptions.

■ We do not consider the bill of exceptions in resolving the issues presented in this appeal. The testimony contained in the bill of exceptions was not before the trial court during the trial. The testimony is not properly before us in this appeal and cannot be considered as evidence.

Appellants, in their first, second, fourth, fifth, sixth, eighth and ninth points of error, contend that the trial court erred in granting a permanent injunction, because:

(1) they were in compliance with Paragraph 9 of the restrictive covenants, (2) they were not required to move the fence due to the exception provided in Paragraph 13 of the restrictive covenants, (3) they were without notice of the applicability of the restrictive covenants to their property, (4) the restrictive covenants regarding the placing of side fences had been abandoned and the enforcement thereof had been waived, (5) appellees failed to prove the existence of a general building plan or scheme of which the fence was in violation, (6) the trial court failed to balance the equities, which resulted in disproportionate harm to appellants, and (7) there is no evidence of an actual or substantial inquiry to appellees or an affirmative prospect thereof. None of the points can be sustained under the record before us.

■ TEX.REV.CIV.STAT.ANN. art. 6646 (Vernon 1969)[1] provides that the recording of any instrument authorized to be recorded shall constitute notice to all persons of the existence of such instrument. A purchaser of land is charged with notice of the existence, contents and legal effects of all instruments in his chain of title, and is further charged with notice of any other instruments to which his conveyance refers. *Frey v. DeCordova Bend Estates Owners Association,* 632 S.W.2d 877 (Tex. App.—Fort Worth 1982), *aff'd,* 647 S.W.2d 246 (Tex.1983); *Collum v. Neuhoff,* 507 S.W.2d 920 (Tex.Civ.App.—Dallas 1974, no writ); *Smith v. Bowers,* 463 S.W.2d 222 (Tex.Civ.App.—Waco 1970, no writ).

A general plan or scheme of development in a residential subdivision, such as the subdivision here involved, may be established in various ways, such as the recordation of "Covenants, Conditions and Restrictions" which affect and burden every lot in the subdivision, or the recordation of a map of the subdivision, or by representations made in brochures or oral statements. *Lehmann v. Wallace,* 510 S.W.2d 675 (Tex. Civ.App.—San Antonio 1974, writ ref'd n.r. e.); *Massengill v. Jones,* 308 S.W.2d 535 (Tex.Civ.App.—Texarkana 1957, writ ref'd

n.r.e.). *See also Collum v. Neuhoff,* 507 S.W.2d at 927.

■ Ordinarily, unless a restrictive covenant is removed by agreement of all interested property owners or by declaratory judgment, the covenant may be enforced by any interested property owner. *Simon v. Henrichson,* 394 S.W.2d 249 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n.r. e.). However, a restrictive covenant becomes unenforceable because of abandonment, acquiescence or waiver. *Schoenhals v. Close,* 451 S.W.2d 597 (Tex.Civ.App.— Amarillo 1970, no writ). In a suit to enforce restrictive covenants, the defendant has the burden to prove abandonment or any other defense which he may have to the suit. *Ortiz v. Jeter,* 479 S.W.2d 752 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.).

■ In determining whether it would be inequitable to enforce restrictive covenants against a particular lot owner in a residential subdivision, the equities of the defendant lot owner must be weighed against the equities favoring the plaintiff (and other lot owners) who purchased or acquired their properties on the strength of the covenants. *Cowling v. Colligan,* 158 Tex. 458, 312 S.W.2d 943 (1958).

Appellants argue that their side yard fence, presently located on the property line (twenty feet forward of the building setback line), does not violate Paragraphs 7 and 13 of the Restrictions. They rely upon language in Paragraphs 7 and 13, which they say eliminated the need for submission and approval of plans and specifications for structures, including fences, placed on a lot by the developer during construction of the original improvements to the property.

■ Whether or not the restrictions create an exception for original improvements constructed by the developer, any such exception is clearly inapplicable to the situation before the Court. First, it is conclusively shown by the evidence that appel-

1. Now TEX.PROP.CODE ANN. § 13.002 (Vernon 1984).

lants' construction of the side yard fence made the basis of this suit was not original construction by the developer; second, the side yard fence, as constructed and completed by appellants, was located forward of the building setback line; third, approval for the fence in its present location, which was in violation of the Restrictions, was never obtained by appellants from the Architectural Committee of Ray Ellison Homes, Inc., the developer.

Appellants further argue that they complied with the Restrictions because of Paragraph 9 of the Restrictions, which provides:

The [Architectural] [C]ommittee's approval or disapproval as required in these covenants shall be in writing. In the event the Committee or its designated representative fails to approve or disapprove within thirty (30) days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin construction has been commenced prior to the completion thereof, approval will not be required and the related covenant shall be deemed to have been fully complied with.

Restrictions 13, 7 and 9 must be read in context and construed as a whole. Restriction 13 prohibits construction of a fence forward of the side street building setback line (other than that constructed by the developer at the time the original improvements were made on the lot). Restriction 7 prohibits alteration, erection or placement of any structure, including a fence, (again, other than structures constructed by the developer at the time the original improvements were made on the lot) without prior approval of the homeowner's proposed plans and specifications. Thus, for a homeowner to alter, modify, move or construct a structure, Restrictions 13 and 7 require: 1) submission of plans and specifications for the proposed alterations to existing structures, and 2) approval by the Architectural Committee prior to commencement of construction. With that in mind, Restriction 9 provides that the Architectural Committee's approval (or disapproval) must be in writing.

Considering the record in its entirety, there is no question but that appellants had actual and constructive notice of the Restrictions affecting their home (Lot 22) at the time they built the fence in question. There is no evidence that appellants sought approval of the Architectural Committee to construct the fence *prior* to the time that they actually constructed the same or obtained approval *after* construction was completed. There is no evidence that Ray Ellison Homes, Inc., the developer, at any time, constructed a fence on any lot in the subdivision as part of the original construction on the lot which violated the setback provisions of Restriction 13. The evidence is uncontroverted that, although fence posts were set on Lot 22 by the developer which were not in accordance with the provisions of Restriction 13, the posts were immediately moved when appellees invited the developer's attention to the violation. There is no evidence that the fence in question was initially completed as part of the original construction of the home improvements on Lot 22.

▮ The evidence conclusively shows that Ray Ellison Homes, Inc., established a general plan, or scheme, for the development of the subdivision, and that the Restrictions were a part of that plan and that homes were sold pursuant to that plan. There is no evidence that Ray Ellison Homes, Inc., appellees, or any other lot owner, intended to waive the Restrictions or abandoned their right to enforce the restrictive covenants which affected the subdivision.

There is no evidence which shows that it would be inequitable to require appellants to remove the fence. The evidence establishes that the fence obstructs vision toward the corner of Capewood and Cloverwood and that appellees, William Bradley and Mr. Gancarczyk, were concerned because of the decreased visibility around the corner where children live and play. It is also clearly established by the evidence that the location of appellants' side yard fence is not a trivial violation of the Restrictions, but is a material violation which

impairs the quality of the neighborhood and poses a safety hazard to those who live and drive in the subdivision, particularly in the area of the intersection of Capeswood and Cloverwood Drives. We have carefully considered appellants' second, fourth, fifth, sixth, eighth and ninth points of error. They are overruled.

In their first point of error, appellants complain that the trial court erred in granting the permanent injunction to move the fence in question because they were in compliance with Paragraphs 7 and 9 of the Restrictive Covenants. We do not agree. There is no evidence that they were in compliance with either of the paragraphs. The point is overruled.

The judgment under attack in this case further decreed:

2. That Plaintiffs, RONALD R. CARDENAS and IRENE J. CARDENAS have and recover from Defendants, GERALD E. GILES and JACQUELYN GILES, jointly and severally attorneys' fees in the sum of Ten Thousand Eight Hundred Seventy and 39/100 Dollars ($10,870.39), for services rendered through the trial of this case, and the further sum of Eight Hundred Fifty and No/100 Dollars ($850.00) in the event a Motion for New Trial is filed, and the further sum of Two Thousand Five Hundred and No/100 Dollars ($2,500.00) in the event of an appeal to the Court of Appeals, and the further sum of One Thousand Five Hundred and No/100 Dollars ($1,500.00) in the event an Application for Writ of Error is filed in the Supreme Court of Texas, and the further sum of One Thousand and No/100 Dollars ($1,000.00) in the event the Application for Writ is granted, and the further sum of Two Hundred Fifty and No/100 Dollars ($250.00) in the event a Motion for Rehearing is filed in the Supreme Court of Texas, and the further sum of Three Thousand Five Hundred and No/100 Dollars ($3,500.00) in the event a Petition for Writ of Certiorari is filed in the United States Supreme Court, and the further sum of Ten Thousand and No/100 Dollars ($10,000.00) in the event a Writ of Certiorari is granted. This award of attorney's fees is part of the judgment hereby rendered.

Appellants, in their seventh point of error, contend that the award is excessive. We agree that that portion of the judgment which awarded attorney's fees in the amount of $10,870.39 for legal services rendered through the trial of the case is excessive. We will suggest a remittitur.

The question what are reasonable attorney's fees is a question of fact to be determined by the trier of facts. *Neal v. Neal,* 606 S.W.2d 729 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *Smith v. Davis,* 453 S.W.2d 340 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.). The trial court or the appellate court, as the case may be, has the duty to reduce the amount of attorney's fees when excessive. *Southland Life Insurance Co. v. Norton,* 5 S.W.2d 767 (Tex.Comm'n App.1928, holding approved).

In determining whether the award of attorney's fees is excessive, the appellate court should consider the entire record and decide the issue in the light of the testimony, the amount in controversy, the nature and complexities of the case, and the common knowledge and experiences of the justices as lawyers and judges. *Southland Life Insurance Co. v. Norton,* 5 S.W.2d at 769; *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.).

Attorney's fees, where recoverable, must be reasonable under the particular circumstances of the case and must have some reasonable relationship to the amount in controversy or to the complexity of the issue to be determined, such as the issue here presented. *Wuagneux Builders, Inc. v. Candlewood Builders, Inc.,* 651 S.W.2d 919 (Tex.App.—Fort Worth 1983, no writ); *Argonaut Insurance Co. v. ABC Steel Products Co.,* 582 S.W.2d 883 (Tex. Civ.App.—Texarkana 1979, writ ref'd n.r. e.); *Republic National Life Insurance Co.*

**430**

*v. Heyward,* 568 S.W.2d 879 (Tex.Civ.App. —Eastland 1978, writ ref'd n.r.e.).

 Reasonable attorney's fees may be recovered by a prevailing party who brings suit to enforce a restrictive covenant which affects a residential subdivision. TEX. REV.CIV.STAT.ANN. art. 1293b (Vernon 1980);[2] *Inwood North Homeowners' Association, Inc. v. Meier,* 625 S.W.2d 742 (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ); *Townplace Homeowners' Association, Inc. v. McMahon,* 594 S.W.2d 172 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

In the case at bar, the trial lasted two days. The statement of facts contained 94 pages. Counsel for appellees testified that his charge per hour was $100.00, that such charge is reasonable, that his law firm has "a total of approximately 192 hours over the two years that this thing has been going on," that the total hours "billed" and "unbilled" to appellees up to time of trial was 83.7 hours, and that he spent 25 hours in "trial preparation and attendance." The total time charged to the case was 108.7 hours, and the amount charged was $10,870.39, which was the same amount awarded to appellees by the judgment. The evidence was not controverted by appellants at the trial, nor was counsel for appellees cross-examined by counsel for appellants.

Allowing sixteen hours (two days) for trial, the record shows that counsel for appellees devoted 92.7 hours (11.6 working days) in investigating the case, consulting with appellees and their witnesses, researching the law, and generally preparing the case for trial. There is no doubt but that appellees were well represented by their attorneys. However, if their attorneys spent 92.7 hours in preparing the case for trial, then they overprepared the case, and appellants should not be held liable for attorney's fees due to overpreparing. *See Wuagneux Builders, Inc. v. Candlewood Builders, Inc.,* 651 S.W.2d at 922; *Allied Finance Co. v. Garza,* 626 S.W.2d at 127.

Considering the record in this case, the lack of complexities involved therein, and the applicable law set out above, we hold that the award of $10,870.39 as attorney's fees for legal services furnished appellees through the trial of the suit to require appellants to remove a fence because of a restrictive covenant violation was excessive in the amount of $5,000.00. We further hold that the award for legal services which may be furnished subsequent to September 26, 1983, when the trial ended, is not excessive. Consequently, if appellees within ten days of the date of this opinion file remittitur in this Court in the amount of $5,000.00, we will reform the judgment, and as reformed, affirm the same. Otherwise the judgment insofar as it granted the injunction will be affirmed, but the issue of attorney's fees through the trial of the case will be severed from the remainder of the case and the judgment, insofar as it granted attorney's fees in the amount of $10,-870.39 for legal services through the trial of the case, will be reversed and the issue remanded to the trial court for a new trial. *See* TEX.R.CIV.P. 440.

The judgment of the trial court is affirmed in part and affirmed on condition of remittitur in part.

---

2. Now TEX.PROP.CODE ANN. § 5.006 (Vernon 1984).