**Earl HERRING and Florence Canales Herring, Appellants,**

**v.**

**Robert August BOCQUET; Phillip Edmund Bocquet; Malcolm Oscar Bocquet; Blanche Eugenia Beechie, Appellees.**

No. 04–95–00858–CV.

Court of Appeals of Texas, San Antonio.

Aug. 28, 1996.

Rehearing Overruled Oct. 24, 1996.

Dennis K. Drake, Law Offices of Dennis K. Drake, San Antonio, for Appellants.

Gardner S. Kendrick, Deborah D. Williamson, Cox & Smith Incorporated, San Antonio, for Appellees.

Before RICKHOFF, STONE and HARDBERGER, JJ.

HARDBERGER, Justice.

This attorney's fees case is a prime example that litigation is an expensive sport.

The underlying case was an ingress/egress easement dispute. The appellants, the Herrings, filed a declaratory judgment suit claiming that the two groups of appellees did not have the right to use the easement to get to their property. This roadway easement crossed the Herrings' property. It was the unique position of the Herrings that the appellees could build and maintain the roadway, but not use it. Such an interpretation left the appellees no way to get to their property. There were sixteen appellees, but for simplicity's sake they can be referred to as the Weyel Parties and the Bocquet Parties.

The Herrings say that the only issue was the legal interpretation and construction of an unambiguous deed granting the easement. There is truth in that. The case was ultimately decided by a summary judgment, so there was no trial in the traditional sense. But what a long, litigious, and tortious trail ensued. Four years of litigation, six volumes of transcript and two volumes of statement of facts (on the attorney's fees question), an appeal to this court of appeals, and a further unsuccessful attempt to appeal to the supreme court, and finally the question was resolved except for this appeal on the attorney's fees, which obviously still goes on, now five years after the suit was originally filed.

The underlying suit was resolved against the Herrings. The trial court, on cross-mo-

tions for summary judgment, issued a declaratory judgment interpreting the easement in favor of the Weyel and Bocquet Parties and against the Herrings. The Herrings lost their appeal before this court in an unpublished opinion, and the declaratory judgment was affirmed. The application for writ of error was denied by the supreme court.

The issue now before this court is the attorney's fees awarded by the trial court to the Bocquet parties. The original appeal also included the attorney's fees awarded to the Weyel Parties, but that has been settled by the parties, and the Herrings have dismissed that appeal.

The trial court, after hearing two days of testimony on the attorney's fees question, entered findings of fact and conclusions of law. The judgment awarded the Bocquet Parties fees through trial of $50,000 and $7,500 in post-trial fees (total to both group of defendants). He also awarded an additional $45,000 to the Weyel Parties, which, as mentioned, has now been settled.

■ The Herrings, now with a different lawyer on the excessive attorney fee question, present with considerable logic that $102,500 is a prodigious amount of attorney's fees in a one-issue summary judgment case. It is their position that the attorney's fees are so large that they can only be punitive in nature and reflect the trial court's anger at the Herrings' former attorney more than a logical determination of the reasonable and necessary attorney's fees. Balanced against the Herrings' argument though is that the same trial judge conducted all the hearings throughout the case, and heard the two days of testimony dealing with attorney's fees. The standard of review is an abuse of discretion. What this appellate court would have awarded, had we been making the determination on our own, is of little consequence. The fees awarded are high, and considerably above the norm. But the trial court was there and had the opportunity to weigh the evidence. We are to reverse only for an abuse of discretion; otherwise it is our responsibility to affirm.

## Discussion

Appellant's first point of error is that the trial judge abused its discretion in awarding appellees $102,500 in attorney's fees because the court failed to follow and apply the relevant legal standards for awarding attorneys' fees. Because the Weyel Parties have settled with the appellants, we concern ourselves with the $50,000 awarded to the Bocquet Parties through trial and the $7500 awarded both appellees in post-trial fees.

Appellant first raises the point that attorneys fees are not recoverable unless specifically authorized by statute or contract between the parties, and bring to this court's attention that some of the attorneys fees were based on the Bocquets' counterclaims for tort damages. The work for these fees, say the appellants, must be segregated out from the declaratory judgment and eliminated.

■ Prevailing parties in a declaratory judgment are statutorily entitled to a "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. 37.009 (Vernon 1996). We hold, as did the trial judge, that the Bocquets are entitled to attorney's fees. The Bocquets were defendants in a suit brought under the Act. They were successful. This leads us to the question of the Bocquets' counterclaim also seeking declaratory judgment as to their rights under the easement.

■ As a general rule it is true, as appellants assert, that when attorney's fees can be segregated out among claims or parties, it is required to be done. However:

A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts." *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.—Dallas 1987, writ denied). Therefore, when the causes of action involved in the suit are dependent upon the same set of facts of circumstances and thus are "interwined [sic] to the point of being inseparable," the

party suing for attorney's fees may recover the entire amount covering all claims.

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991).

This is what the Bocquets claim. They also say that the Herrings never excepted to the applicability of the Declaratory Judgment Act to the request for attorney's fees until four years after the declaratory judgment action was initiated. The trial court, after hearing the testimony on attorney's fees, made a finding of fact and a conclusion of law that the "claims asserted by the Plaintiffs and Cross–Defendants arise out of the same transactions and the defense of same entails proof or denial of essentially the same facts. Therefore, the attorneys fees claimed by Defendants and Counter–Plaintiffs cannot be segregated.". Evidence was adduced on this point and is contained in the statement of facts. We agree there is evidence to support the trial judge in his findings of fact, and that the findings of fact support the conclusion of law.

We overrule point of error one.

### How Much Is Too Much?

■ Appellant's second point of error is that there was legally insufficient evidence or factually insufficient evidence to support the attorney's fees awarded. Put in more common terms it is appellant's position that the $50,000 attorney's fees awarded to the Bocquet Parties at the trial level and the $7500 awarded jointly to the appellees for the appellate level is neither reasonable, necessary or just in this case. The Bocquets' attorneys testified that they spent a total of 300.3 hours on the case. The record does not seem to necessarily dispute that this many hours were spent: but appellants say with some justification that just because the hours were spent does not make it reasonable or necessary. We agree that reasonable and necessary is an objective standard. This must be decided by the fact finder: in this case the trial court. Once the trial court has done so, his findings are only to be disturbed if there is an abuse of discretion.

■ Appellants point out that 35 hours of the Bocquet attorneys were spent on the

telephone talking with the Weyel attorneys. The Weyel attorneys charged for the same 35 hours, so that was 70 hours of billable attorneys fees. Yet more time was spent talking in-house with other attorneys and legal assistants within the same law firm. In that case everybody was billing. The hours piled up. This is understandably galling to the appellants. From their point of view they are having to pay for a bunch of lawyers talking to each other. Useless conferences except for purposes of attorney's fees.

> I learned the art of billing, the first rule of which is that a lawyer spends much of his waking hours in conferences. Client conferences, phone conferences, conferences with opposing lawyers and judges and partners and insurance adjusters and clerks and paralegals, conferences over lunch, conferences at the courthouse, conference calls, settlement conferences, pretrial conferences, post-trial conferences. Name the activity, and lawyers can fabricate a conference around it.

*The Rainmaker*, Chapter One, by John Grisham.

There is truth in this, but there is another side. Lawyers learn much from talking to other lawyers and paralegals. In the real world that is very much a part of the preparation for a case, hearing, or brief. Conferences, with the many parties pointed out by Grisham, are a part of the fabric of the law. They are as necessary as quietly sitting reading a case. No lawyer could practice law today without his or her telephone. Great blocks of time are eaten up by it; often the majority of the day. It is reasonable that all lawyers include conferences, one way or the other, in their billing. The purest talking by a lawyer may be his or her advocacy in court, but it takes up a relatively tiny percentage of a lawyer's time.

Grisham's quote implies potential abuse of conferences, and no doubt it happens. The more common problem though is that the conference, while well-meaning, turns out to be useless: nothing accomplished. But that is also true for legal research, legal drafting and argument itself. About the only thing that can be said with certainty is that confer-

ences are necessary, but like everything else can be overdone.

■ Complaints are also lodged by the appellants that the appellees amended their original answers and counterclaims eight times, and generally generated paperwork at a great rate, far beyond what was necessary. The transcript shows 72 entries through the final judgment and the findings and fact and conclusions of law. The majority of these were filings by the appellees. Document research and preparation of the Bocquets' attorney consumed 95.90 hours. Looking over the entire billing statements of the appellees it is difficult to escape the conclusion that the work done is out of balance with the one simple untenable issue raised by the appellants, and ultimately correctly decided by summary judgment. The work done on a case, while resisting a rigid guideline, must bear some logical relationship to the amount in controversy and the complexity of the issue to support the awarding of attorney's fees to the prevailing party. This court, in the past, has had an opportunity to review a similar situation.

> The trial court or the appellate court, as the case may be, has the duty to reduce the amount of attorney's fees when excessive. *Southland Life Insurance Co. v. Norton,* 5 S.W.2d 767 (Tex. Comm'n App. 1928, holding approved). 'In determining whether the award of attorney's fees is excessive, the appellate court should consider the entire record and decide the issue in the light of the testimony, the amount in controversy, the nature and complexities of the case, and the common knowledge and experiences of the justices as lawyers and judges … Attorney's fees, where recoverable, must be reasonable under the particular circumstances of the case and must have some reasonable relationship to the amount in controversy or to the complexity of the issue to be determined, such as the issue here presented.'

*Giles v. Cardenas,* 697 S.W.2d 422, 429 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); *see also City of Fort Worth v. Groves,* 746 S.W.2d 907, 918 (Tex.App.—Fort Worth 1988, no writ)(reviewing court may draw on common knowledge and experience as lawyers).

*Giles* also involved a land question, specifically a restrictive covenant. This case actually went to trial and lasted two days. The appellees spent 92.7 hours in preparation for the trial, and got credit for an additional 16 hours at the trial. Nevertheless this court cut the attorney's fees awarded by the trial court of $10,870.39 by $5,000, almost 50 per cent. As in the present case, the appellee attorneys were reputable, skilled attorneys, and no attack is made on the accuracy of their records.

> However, if their attorneys spent 92.7 hours in preparing the case for trial, then they overprepared the case, and appellants should not be held liable for attorney's fees due to overpreparing.

*Giles,* 697 S.W.2d at 430.

In the instant case, the Bocquets attorneys spent 300.3 hours in a one-issue summary judgment action. Even if the appellants are responsible for some of their own woes, which is undoubtedly the case, we find both the time and the amount awarded to the appellees attorneys excessive.

"The fee must be reasonable under the particular circumstances of the case and bear some reasonable relationship to the amount in controversy. *Argonaut Ins. Co. v. ABC Steel Products Co.,* 582 S.W.2d 883 (Tex.Civ. App.—Texarkana 1979, writ ref'd n.r.e.). The fee should be only that which would be reasonable for a litigant himself to pay his own attorney." *Armstrong Forest Products v. Redempco,* 818 S.W.2d 446, 453 (Tex. App.—Texarkana 1991, writ denied).

### Holding

We agree that the trial court was correct in awarding attorney's fees under the Declaratory Judgment Act, and we affirm that part of the judgment. We find that the amount of the attorney's fees awarded through trial was excessive by $20,000. We find that the attorney's fees on appeal of $7500 awarded jointly to both appellees was reasonable, but as one of the appellants has settled, the Bocquet attorneys are only entitled to their half, and not the entire amount which was meant by

the trial court to be used by both appellants. Therefore the appellate attorney fees for the Bocquet attorneys is $3750.

If appellees within ten days of the date of this opinion file remittitur in this Court in the amount of $23,750, we will reform the judgment, and as reformed, affirm the judgment. Otherwise the case on the attorney's fees will be reversed and remanded to the trial court for a new trial.

The judgment of the trial court is affirmed in part and affirmed on condition of remittitur.