Audie Clifton MUSGRAVE, Jr., and Wife, Judith Louise Musgrave, Brookhaven Retreat, Inc., Tommy Edwin Hanson and Wife, Dianne Hanson, Appellants,

v.

The BROOKHAVEN LAKE PROPERTY OWNERS ASSOCIATION, Robert Owen and Wife, Linda Owen, Robert Brown and Wife, Betty Brown and Milton Lewis and Wife, Lillian Lewis, Appellees.

No. 06–97–00136–CV.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 24, 1998.

Decided March 19, 1999.

Michael E. Starr, James B. Gillen, Jr., Conner, Gillen, Yarbrough, Tyler, for appellants.

Sharla Neill, Wynne & Wynne, Wills Point, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Audie Musgrave, Jr. and others (Musgrave) appeal from an adverse decision in a suit by Brookhaven Lake Property Owners Association and several property owners (Owners) for injunctive relief and damages based on alleged breaches of restrictive covenants that control a subdivision in Wood County called Brookhaven In The Pines. In the suit below, the Owners contended that Musgrave was obligated to arrange and pay for maintenance of the roads, lake, and recreational areas in the subdivision. The trial court granted injunctive relief, actual damages, statutory penalties, attorneys' fees, and costs to the property owners. Musgrave complains of the injunctive relief, the award of actual damages, and the award of attorneys' fees and costs.

Musgrave raised the following issues:

(1) whether Brookhaven Lake Property Owners Association has standing to sue to enforce restrictive covenants or for damages resulting from the alleged breach of restrictive covenants;

(2) whether the Owners offered any evidence of reasonable and necessary attorneys' fees and expenses;

(3) whether the Owners offered any evidence or sufficient evidence to prove that a covenant to maintain the private roadways, lake, and recreational property runs with that real property and now resides with the current owner, Musgrave;

(4) whether the Owners offered any evidence or sufficient evidence to prove that damages resulted from Musgrave's failure to reasonably maintain the roadways, lake, and recreational property as required by the covenants alleged to be running with the land;

(5) whether the residual four-year statute of limitations bars the recovery of a portion of the Owners' alleged damages;

(6) whether an injunction preventing non-property owners from using the roads, lake, and recreational property was warranted; and

(7) whether an injunction relating to the implementation of a forest resource management plan on the recreational property failed for lack of specificity or because it granted relief to which the Owners and other lot owners were not entitled.

In November 1964, Thomas Anderson and George Basham owned a tract of land comprising 862 acres in Wood County. They filed a plat for a portion of the acreage designated as Brookhaven In The Pines, Section 1. In 1966, the two men filed four additional plats for Sections 2, 3, 4, and 5. Each of the plats contained the following language:

NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS

That we, George V. Basham Jr. and Thomas L. Anderson, do hereby adopt this plat designating the hereinabove described property as BROOKHAVEN IN THE PINES, SECTION NO. [ ] in the County of Wood, Texas and we hereby reserve for the owners of the Lots in the said Section No. [ ] and all other prior and subsequent subdivisions of the above mentioned 862.12 Acre tract the recreation and roadway areas as shown on said plat. The roadway easements and areas reserved for roadways and recreation shown hereon are private ways and substandard in design and the County of Wood will never assume maintenance of same.

In June 1968, Anderson and Basham executed a document entitled "Declaration of Restrictive Use." It was filed in the Wood County clerk's office in September 1968 and, in relevant part, contained the following language:

WHEREAS, as an inducement to the purchasers of lots in the addition known as Brookhaven–In–The–Pines, we have personally, or through our agents or representatives, made representations that such purchasers will have rights to certain restrictive uses of the lands described in "Exhibit A" attached owned by us in Wood County, Texas;

THEREFORE, to insure that such owners of lots in the addition designated as Brookhaven–In–The–Pines have such rights appurtenant to their ownership of such lots, we do hereby place certain safeguards and restrictions on the real property described in "Exhibit A" attached hereto, as follows, to-wit:

1. No use shall ever be made of the lands described in "Exhibit A" attached hereto, which will ever interfere with the rights and privileges of the owners of lots in the addition designated as Brookhaven–In–The–Pines to use such lands for hunting, fishing and recreation, subject at all times to reasonable regulation by us to insure the safety, sanitation and pleasure of the greatest number of such lot owners.

2. The rights and privileges herein granted to the owners of lots in Brookhaven–In–The–Pines shall never be used by them for commercial purposes or for private gain.

\* \* \*

Each of the above restrictive covenants shall continue in force and be binding upon us, the said Thomas L. Anderson and George V. Basham, Jr., our heirs, grantees and assigns forever, provided, however, that these restrictions may be amended or canceled by recording an instrument so stating executed by all of the owners of the lots in the addition designated as Brookhaven–In–The–Pines.

In July 1968, Basham conveyed to Anderson all of his one-half interest in certain properties within the Brookhaven In The Pines addition. Also on that date, as partial consideration for the conveyance, Anderson executed a document entitled "Declaration of Indemnity," which was filed in the Wood County clerk's office. That document contained the following language:

Whereas, in the presentation and offering for sale of such lots, representations were made concerning the use of other properties as a right appurtenant to the ownership of such lots and representations were made concerning the maintenance of a lake, roads and recreation areas, and

\* \* \*

THEREFORE, BE IT KNOWN that as a part of the consideration for the conveyance to Thomas L. Anderson of such real property, the said Thomas L. Anderson does agree and covenant that he will honor all representations and warranties made by George V. Basham, Jr. or by Jess L. Irwin in the sale of lots

in the addition known as Brookhaven In The Pines, and further,

*That as a part of such consideration, the said Thomas L. Anderson agrees that ·he will assume the sole and full responsibility for reasonable maintenance of all roads, streets and lakes, and the stocking and fertilizing thereof, and for maintenance of recreation areas in the addition designated as Brookhaven In The Pines.*

Any obligation herein created may be enforced by any owner of a lot in Brookhaven In The Pines against Thomas L. Anderson alone, and he does hereby agree to hold harmless George V. Basham, Jr. or Jess L. Irwin from any and all liabilities arising from the premises.

(Emphasis added.).

In March 1975, Anderson conveyed the property to the James Robison Evangelistic Association ("Robison"). Robison executed a document entitled "Assumption of Liabilities and Declaration of Indemnity." In relevant part, that document included the following language:

WHEREAS, in the presentation and offering for sale of lots located in [the additions designated as Brookhaven in the Pines Sections 1 through 5 and the Pine Oaks Addition], representations were made concerning the use of other properties as a right appurtenant to the ownership of such lots and representations were made concerning the maintenance of a lake, roads and recreations [sic] areas; and

\* \* \*

WHEREAS, Thomas L. Anderson, of even date herewith is conveying by Deed of Gift, certain real property still owned in Wood County, Texas to the James Robison Evangelistic Association;

NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS that James Robinson [sic] Evangelistic Association, Inc. and the Brookhaven Corporation, jointly and severally agree and

covenant with the said Thomas L. Anderson, his heirs, personal representatives and assigns, as follows:

1. *That the said James Robison Evangelistic Association, Inc. and Brookhaven Corporation hereby assume the performance of all obligations of the said Thomas L. Anderson, to the said George V. Basham, Jr. or Jess L. Irwin under or by reason of the aforementioned Declaration of Indemnity or to the owners or holders of any of the lots described in said Declaration of Indemnity;*

2. *That the said James Robison Evangelistic Association, Inc. and Brookhaven Corporation hereby assume the sole and complete responsibility for the reasonable maintenance of all roads and streets, the lake (including the stocking and fertilization thereof) and the recreation areas in the aforementioned Brookhaven In The Pines Sections 1 through 5 Additions and the Pine Oaks Addition, located in Wood County, Texas;*

3. That the said James Robison Evangelistic Association, Inc. shall indemnify and hold Thomas L. Anderson harmless from any claims, demands, actions or causes of action which might be asserted upon or by reason of any of the agreements or covenants assumed hereby, including any costs, expenses or fees incurred in defending any suits or actions instituted against Thomas L. Anderson upon or by reason of any agreements heretofore made by him.

\* \* \*

6. *Any agreement or obligation assumed herein by James Robison Evangelistic Association, Inc. and/or Brookhaven Corporation shall be enforceable by any lot holder, George V. Basham, Jr. or Jess L. Irwin, directly against them or either of them.*

(Emphasis added.).

In April 1984, Audie Musgrave and his wife acquired the property within the

Brookhaven In The Pines addition from Robison. The acquired property included the lake, roadways, recreational areas, and a 4.733 acre tract on which a lodge building is located. The conveyance deed to Musgrave for the roadways, lake, and recreational areas specified that the conveyance was subject to all restrictive covenants, easements, and zoning ordinances affecting the property.

Musgrave has owned the above property since 1984. He is president of and a director for Brookhaven Retreat, Inc. From June 1984 to October 1995, he rented the building to members of the public who were not lot owners. He has also advertised that the lodge and its facilities were available for rent to the general public. A brochure advertising "Brookhaven Retreat" was printed to advertise to persons other than lot owners the recreational uses of the lake and recreational areas, including swimming, canoes, and tug-of-war pits. Brookhaven Retreat and its agents allowed persons other than lot owners to use the recreational areas to hunt, fish, boat, and swim. Logging operations were also permitted on the tract.

The trial court rendered judgment for the lot owners and enjoined Musgrave, Brookhaven Retreat, and others named from interfering with the exclusive rights of the lot owners to use the lake, roadways, and recreational areas in the addition and from permitting or allowing guests of Brookhaven Retreat who are not lot owners to use the lake, roadways, and hunting and recreational areas. A permanent injunction also issued enjoining Musgrave and Brookhaven Retreat from any use which would interfere with the hunting, fishing, and recreational rights of the lot owners. The court further ordered that the injunctions against Brookhaven Retreat, as set forth in the 1995 Partial Summary Judgment, should remain in full force and effect.

This appeal arises from that judgment.

Musgrave first contends that Brookhaven Lake Property Owners Association lacks standing to sue to enforce restrictive covenants, or for damages resulting from the alleged breach of restrictive covenants, or to recover expended funds because the Association does not meet the definition of a "property owners' association" as defined in Section 202.001(2) of the Texas Property Code in that the Association does not manage or regulate real property in the subdivision. A property owners' association is defined as

[A]n incorporated or unincorporated association owned by or whose members consist primarily of the owners of the property covered by the dedicatory instrument and through which the owners, or the board of directors or similar governing body, manage or regulate the residential subdivision, . . . . [1]

Musgrave contends the evidence was undisputed that the Brookhaven Lake Property Owners Association does not manage or regulate the residential subdivision because membership in the Association is voluntary, as is compliance with the Association's regulations. Musgrave also contends that the Association has no standing to sue for any funds expended by it for maintenance of the subdivision.

 Standing is a component of subject matter jurisdiction. Subject matter jurisdiction is an issue that may be raised for the first time on appeal, and it may not be waived by the parties.[2]

 Musgrave's standing complaint fails. Musgrave's argument is not a challenge to standing, but is actually a challenge to the Association's *capacity* to bring suit. A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a

---

1. Tex. Prop.Code Ann. § 202.001(2) (Vernon 1995).

2. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993).

justiciable interest in the controversy.[3] Musgrave argues that the Association does not meet the definition of "property owners' association" as defined by the Texas Property Code and therefore cannot bring suit. The Property Code confers *capacity* to sue on a property owners' association on behalf of its members. Whether or not the Brookhaven Association meets the definition of property owners' association in the Property Code and can therefore bring suit is a capacity question. Also as part of the standing argument, Musgrave contends that the Association has no right to recover expenditures that it voluntarily made to maintain the subdivision. The money spent by the Association consisted of monies paid to it by property owners who were members of the Association. Whether the Association could recover this money in the capacity in which it sues is also a capacity question.

■ Musgrave's contention fails because the Association was designated by those who own property in the subdivision to bring suit. It is immaterial whether the Association meets the definition of property owners' association because the statute under which the Association is suing provides that suit may be brought to enforce restrictive covenants by "[a] property owners' association *or other representative* designated by an owner of real property...."[4] The record does not show how many Brookhaven owners were members of the Association; however, the Association appears to have been open to all owners. The work of the Association clearly inured to the benefit of all of the property owners. The record shows that the Association had a meeting at which the board of directors recommended that suit be brought against Musgrave, and attending property owners adopted the recommendation by a show of hands. The first point of error is overruled.

■ Musgrave further complains that there is no evidence, or insufficient evidence, to support various findings by the trial court. If an appellant raises both no evidence and insufficient evidence points, we first rule on the no evidence point.[5] In reviewing a no evidence point, we view the evidence in the light most favorable to the finding, consider only evidence supporting the finding, indulge all reasonable inferences therefrom, and disregard all contrary or conflicting evidence and inferences.[6] We will sustain a no evidence point only if the record contains no more than a scintilla of evidence to support the trial court's finding.[7] In reviewing an insufficient evidence point, we consider and weigh all the evidence.[8]

Next, Musgrave contends that there was no evidence or there was insufficient evidence to prove that a covenant to maintain the private roadways, lake, and recreational property runs with that real property and now resides with him as the current owner. Musgrave denies any obligation of the original developers or of Musgrave's predecessor (Robison) to reasonably maintain the roads, lake, recreational property, and forested property, and further denies that such maintenance is an obligation which runs with the land now owned by Musgrave.

■ In Texas, a covenant runs with the land when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the succes-

**3.** *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996).

**4.** Tex. Prop.Code Ann. § 202.004 (Vernon 1995). (Emphasis added.).

**5.** *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

**6.** *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992).

**7.** *Freeman v. Texas Compensation Ins. Co.*, 603 S.W.2d 186, 191 (Tex.1980).

**8.** *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951).

sor to the burden has notice.[9] Only two elements of a running covenant are disputed in the instant case: the requirement that the original parties intend the covenant to run with the land and the requirement that the successor to the burden have notice of the covenant.

■ Musgrave contends that the Owners have failed to demonstrate that the original developers, Anderson and Basham, intended the obligation to maintain the roads, lake, and recreational and forested property to run with the land which is now owned by Musgrave. Specifically, Musgrave contends that the failure of Anderson to use the language assuming the maintenance obligations for "his heirs and assigns" indicates that he assumed a personal liability alone, and such obligation did not run with the land. Such terminology, although helpful in determining intent, is not dispositive, and an obligation intended to run with the land can be created without such language.[10] Intent may be implied from the fact that the benefit of the covenant was intended to be of more than a transitory nature.[11]

■ There was sufficient evidence developed at trial on which the trial court could make a factual determination that the original owners' intent was for the maintenance obligations to run with the land. The original plats filed by Anderson and Basham, the original developers, state that Wood County would never assume maintenance of the roadways. Certainly, Anderson and Basham intended for the maintenance obligation to lie with some person or entity.

The "Declaration of Restrictive Use" filed by Basham and Anderson does not mention any maintenance obligations. However, a later document, executed when Anderson acquired Basham's interest, does offer some indication of their intent. Anderson and Basham executed a document entitled "Declaration of Indemnity" when Anderson acquired Basham's one-half interest, making Anderson the sole owner of the property. The document recited that certain representations were made by the developers to the lot purchasers in the sale of lots in Brookhaven concerning the maintenance of the lake, roads, and recreational areas and that Anderson agreed to honor all representations. Anderson then agreed that he would assume sole and full responsibility for maintenance of all roads, streets, the lake, and recreational areas. The representations made to the lot purchasers are not specifically disclosed in the document. These documents would seem to indicate that Anderson and Basham represented to the lot purchasers that they, the lot owners, would not be responsible for maintenance and that this document was simply an agreement whereby Anderson, as the remaining developer, would agree to carry the maintenance burden alone and would hold Basham harmless from any liabilities.

In the next conveyance of property, Anderson, an original developer, conveyed his interest to the James Robison Evangelistic Association in 1975. The deed specifically conveyed the property subject to "any and all restrictions, covenants, conditions, and easements, if any . . . including . . . those listed in Exhibit B." Exhibit B specifically listed the "Declaration of Indemnity" between Anderson and Basham which contained Anderson's sole assumption of maintenance obligations. Robison and Anderson also executed a separate document entitled "Assumption of Liabilities and Declaration of Indemnity," where Robison specifically assumed liability for the maintenance of the roads, lake, and

---

9. *Inwood North Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex.1987).

10. RESTATEMENT (FIRST) OF PROPERTY § 531 cmt. c (1944); *see also* 21 C.J.S. *Covenants* § 26 (1990).

11. Howard R. Williams, *Restrictions on the Use of Land: Covenants Running with the Land at Law,* 27 TEX. L. REV. 419, 450 (1949); RESTATEMENT (FIRST) OF PROPERTY § 531 cmt. d (1944).

recreational areas and would indemnify Anderson for any actions instituted against him concerning the obligations he had previously assumed.

The only reasonable inference that can be drawn from the execution of these indemnity agreements is that the indemnitees, first Basham, then Anderson, recognized that, by taking title to the property, each could be held liable for maintenance obligations and each desired to have recourse should they ever be held liable.

Robison conveyed the land to Musgrave in 1984. The deed recited that the conveyance was made subject to all restrictive covenants, easements, and zoning ordinances affecting the subject property.

These documents constitute some evidence that the original owners intended for the maintenance obligation to run with the land.

Musgrave also contends he had no knowledge that he was assuming maintenance obligations by purchasing the property. A purchaser is charged with knowledge of the provisions and contents of recorded instruments.[12] The deed from Robison to Musgrave contained a provision which recited that the conveyance was subject to all restrictive covenants, easements, and zoning ordinances affecting the property. The previous conveyances and related agreements are on file in the deed records of Wood County. Musgrave therefore had constructive knowledge of the contents of the conveyance and the obligation he assumed by accepting the deed.

We therefore find that there was sufficient evidence to support the trial court's determination that a covenant to maintain the roads, lake, and recreational areas did exist. The covenant touches and concerns the land; relates to a thing in existence, that is, the roadways, lake, and recreational areas; was intended to run with the land, as evidenced by the actions and documents of the original developers; and Musgrave had constructive notice of such covenant due to the contents of the papers filed in the deed records.

Point of error two is overruled.

Next, Musgrave contends that there was no evidence or there was insufficient evidence to prove that damages resulted from Musgrave's failure to reasonably maintain the roadways, lake, and recreational property as required by the covenants allegedly running with the land. Musgrave contends that the Owners did not provide any specific testimony concerning the necessity of the expenditures of the Association to maintain the property in question; there was no direct testimony of how the purchased materials were used; there was no expert testimony indicating that the materials purchased were necessary to keep the roads in good condition; there were no photographs showing the roads to be impassable; the canceled checks and the expense summary provided a mere scintilla of evidence; and there was insufficient evidence to establish that the expenditures were necessary to reasonably maintain the roads and lake. Musgrave never challenged the reasonableness of the expenditures made by the Association, only the necessity of the expenditures.

The Owners counter that the evidence was sufficient to support the judgment in favor of the Owners for reimbursement of funds expended by the Association due to Musgrave's failure to maintain the common areas. The treasurer of the Association and each of the individual plaintiff-owners testified regarding the condition of the common areas and roads and to the necessity of expenditures made by the Association to halt deterioration of these areas. The witnesses also testified that they had been either directly involved in the maintenance work or had witnessed the work done to the common areas by the

12. *Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n,* 933 S.W.2d 570, 575 (Tex.App.-Houston [1st Dist.] 1996, writ denied).

Association or by persons who had been hired by the Association.

■ The trial judge, as fact finder, was entitled to believe all or any part of the evidence before him.[13] The testimony of the witnesses for the Owners was sufficient evidence to show that damages resulted from Musgrave's failure to reasonably maintain the roadways, lake, and recreational property, as required by covenants running with the land. Several witnesses so testified.

■ Musgrave cites no authority for the necessity of expert testimony regarding the necessary repairs and maintenance to maintain the roads, lake, and recreational areas. Expert testimony should be admitted only when it will aid the fact finder in making inferences regarding the fact issues more effectively.[14] In the commentary to Federal Rule of Evidence 702, which is identical to Texas Rule 702, the following analysis is suggested:

> [T]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.[15]

The testimony by the witnesses in this case involved the condition of the roads and the lake. The witnesses testified to the maintenance done by the Association in patching potholes and restocking and fertilizing the lake. The deterioration of the roads and lake, the necessity of maintenance, and the means of maintaining these areas are within the general experience and common sense of a layman.

This point is overruled.

■ Next, Musgrave contends that the residual four-year statute of limitations specified by Texas Civil Practice and Remedies Code § 16.051 bars the recovery of a portion of the damages awarded to Brookhaven lot owners because the damages occurred more than four years prior to the day the underlying suit was filed, August 25, 1990. Section 16.051 specifies that every action for which there is no express limitations period, except for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.[16]

■ Whether the statute of limitations is applicable to a given factual situation is a question of law rather than a question of fact, unless there is a factual dispute as to when the injury occurred or should have been discovered.[17]

■ Relying on *Tony's Tortilla Factory, Inc. v. First Bank,*[18] the Owners contend that Musgrave has waived the limitations defense due to his failure to provide supporting proof or secure findings on the limitations issue. *Tony's Tortilla Factory* relies on *Metal Structures* for this proposition. However, this case is distinguishable from the present case. The limitations issue in *Metal Structures* involved

**13.** *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986).

**14.** *Story Servs., Inc. v. Ramirez,* 863 S.W.2d 491, 499 (Tex.App.-El Paso 1993, writ denied).

**15.** Ladd, *Expert Testimony,* 5 VAND. L.REV. 414, 418 (1952) (quoted in Notes of Advisory Committee, FED.R.EVID. 702). Also cited and approved in *Pierce v. State,* 777 S.W.2d 399, 414 (Tex.Crim.App.1989).

**16.** TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997).

**17.** *Flukinger v. Straughan,* 795 S.W.2d 779, 786 (Tex.App.-Houston [14th Dist.] 1990, writ denied), *citing Smart v. Texas Am. Bank/Galleria,* 680 S.W.2d 896, 898 (Tex.App.-Houston [1st Dist.] 1984, no writ).

**18.** 857 S.W.2d 580, 590 (Tex.App.- Houston [1st Dist.] 1993), *aff'd in part, rev'd in part on other grounds,* 877 S.W.2d 285 (Tex.1994), *citing Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93, 99 (Tex.Civ.App.-Amarillo 1971, writ ref'd n.r.e.).

a question of when the cause of action accrued based upon the discovery of the injury. It is well settled that a question of when an injury should have been discovered is typically a question of fact which requires evidence and findings.[19] However, the issue on this appeal does not involve when the injury occurred or should have been discovered, but rather, whether the statute of limitations bars damages arising more than four years prior to the filing of this suit. Where the facts are undisputed, the defendant may establish that the plaintiff's claim is barred by the statute of limitations as a matter of law.[20] Questions of law are subject to de novo review.[21]

Musgrave complains that the statute of limitations bars damages which occurred more than four years prior to the date the suit was filed. The clerk's record shows that the instant suit was filed on August 25, 1994. Applying the four-year statute of limitations, the Owners would be entitled to recover for damages from August 25, 1990, forward. Clearly, the Owners had no right of action for injuries occurring before August 25, 1990. Musgrave properly pleaded the statute of limitations defense, and the evidence demonstrates that he is entitled to it. A division of damages is easy to accomplish, since the summary in plaintiffs' Exhibit 47[22] contains dated entries purporting to represent separate expenditures.

We conclude that the residual four-year statute of limitations found in Section 16.051 does bar recovery of a portion of the damages awarded and therefore reduce the damages awarded by $24,971.50, which constitutes the amount of expenditures made by the Owners for maintenance prior to August 25, 1990, according to the expense summary admitted into evidence at trial.

Musgrave's fourth point of error is sustained.

Next, Musgrave contends that an injunction preventing guests of the Brookhaven Retreat from using the roads, lake, and recreational property was not warranted. In October 1995, the court granted a partial summary judgment against Musgrave. That judgment enjoined Musgrave from allowing members of the general public who rent the Brookhaven Retreat from using the lake or recreational property in any manner which would infringe on the exclusive rights of the Brookhaven Property lot owners of the tract in question.

 In reviewing the granting of a permanent injunction, this Court must determine if the trial court clearly abused its discretion in granting the injunction.[23] Temporary and permanent injunctions are reviewed under the same standard.[24] An abuse of discretion occurs when the trial court misapplies the law to the established facts, or when the evidence does not reasonably support the conclusion that the applicant has a right of recovery.[25]

19. *Neel v. HECI Exploration Co.*, 942 S.W.2d 212, 221 (Tex.App.-Austin 1997), *rev'd on other grounds*, 982 S.W.2d 881, 42 Tex. Sup.Ct. J. 93, 1998 WL 750917 (October 29, 1998); *Hassell v. Missouri Pac. R.R. Co.*, 880 S.W.2d 39, 43 (Tex.App.-Tyler 1994, writ denied); *Enterprise–Laredo Assocs. v. Hachar's, Inc.*, 839 S.W.2d 822, 838 (Tex.App.-San Antonio 1992), *writ denied per curiam*, 843 S.W.2d 476 (Tex.1992).

20. *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.).

21. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex.1994).

22. Exhibit 47 contains a listing of expenditures made by the Association for road and lake maintenance from July 1985 through November 1996.

23. *Priest v. Texas Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex.App.-Dallas 1989, no writ).

24. *Id.*

25. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

■ This trial court's judgment is supported by the record, which clearly provides that certain rights in the property were reserved strictly for the lot owners. The Owners cite our opinion in an earlier trial related to this subdivision, *Anderson v. McRae.*[26] *Anderson* was a suit by lot owners of the instant subdivision for declaratory relief where the trial court was asked to declare that the lot owners had the exclusive right to the use of easements, as against plaintiff's (predecessor in title to Musgrave) claim that guests of the lodge had the right to use the easements. In *Anderson,* this Court held that the subdivision lot owners acquired rights by deed which referred to a recorded plat.[27] It was further held that sufficient evidence supported the lot owners' claim that the lot owners had title and exclusive rights to the easements, including all of the roads, parks, and recreational areas, with the exclusive right of fishing, hunting, swimming, boating, and other recreational activities upon all of the land described.[28] It is apparent that the question raised in the present case is identical to the one raised in *Anderson.*

Since the *Anderson* decision constitutes precedent in this same matter, we are bound to follow our own prior determination that the lot owners have exclusive rights of use to the easements which make up the roads, lake, and other recreational areas. The trial court did not abuse its discretion in granting the permanent injunction enjoining persons other than lot owners from interfering with the lot owners' exclusive rights.

Point of error five is overruled.

**26.** 495 S.W.2d 351 (Tex.Civ.App.-Texarkana 1973, no writ).

**27.** *Id.* at 355.

**28.** *Id.* at 354.

**29.** *Priest v. Texas Animal Health Comm'n,* 780 S.W.2d at 875.

Next, Musgrave contends that the injunction relating to the implementation of a forest resource management plan on the recreational property failed for lack of specificity, or it failed because it granted relief to which the lot owners were not entitled.

The court enjoined Musgrave from timbering or otherwise cutting trees for commercial purposes in the hunting and recreational areas, and from implementing a forest management plan procured from a consultant or from similar plans for commercial harvesting of trees in the hunting and recreational areas.

As discussed earlier, on appeal, we review the trial court's granting of a permanent injunction under a clear abuse of discretion standard.[29]

Musgrave contends that the request for injunctive relief was not specific enough to pass muster under Rule 683 of the Texas Rules of Civil Procedure.

■ Rule 683 reads as follows:
Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

TEX.R. CIV. P. 683. The requirements of Rule 683 are mandatory and must be strictly followed.[30]

**30.** *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.,* 715 S.W.2d 640, 641 (Tex.1986). We recognize that the courts of appeals in Texas have not consistently found this provision to apply to permanent injunctions; the more recent cases do apply the provision to both permanent and temporary injunctions. This is also the interpretation given to the identical federal provision by the Fifth Cir-

■■ The Owners counter that Musgrave waived this complaint because he did not object at trial to the language presented in the proposed judgment submitted by the lot owners, nor did Musgrave object to the lot owners' proposed findings of fact and conclusions of law. However, the failure of the order to meet the requirements of Rule 683 renders it fatally defective and void, whether specifically raised by point of error or not.[31]

■■ Musgrave specifically complains that the injunction lacked specificity because the order impermissibly incorporated another document in violation of Rule 683 when the injunction enjoined from "implementing the Forest Resource Management Plan procured from Brian Forestry Consultants or any similar plan for the commercial harvesting of trees in the hunting and recreation areas described above."

■■ A plain reading of the rule prohibits the incorporation of another document into the injunction order. Furthermore, since Rule 683 is patterned after Federal Rule of Civil Procedure 65(d), we may look for guidance to federal case law interpretations of the identical federal provision. The intent of the prohibition on incorporation is simply to insure that all parties have adequate notice of the conduct that is prohibited.[32] The federal circuits have narrowly construed Rule 65(d), but have allowed the incorporation of other documents if the document was physically attached to the judgment or order.[33] Given the intent of the provision, we find that a narrow construction is appropriate.

In the instant case, the forest resource management plan was not attached to the final judgment and the text of the plan was not included in the order. We find that Rule 683 prohibits incorporation of a document that is not part of the judgment. The injunction provision which references the forest resource management plan fails for lack of specificity and must be reversed. The remaining provisions of the injunction, including the provision prohibiting "timbering or otherwise cutting trees for commercial purposes in the hunting and recreation areas," meet the requirements of Rule 683 and are affirmed.

Point six is sustained.

Last, Musgrave contends that there was no evidence of reasonable and necessary attorneys' fees or expenses. The instant suit was brought under Section 5.006 of the Texas Property Code, which provides in relevant part that, in a suit for a breach of a restrictive covenant, the court shall award to the prevailing party reasonable attorney's fees, in addition to the party's costs and claim.[34] This section also provides that:

(b) To determine reasonable attorney's fees, the court shall consider:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

cuit. *See North Alamo Water v. City of San Juan*, 90 F.3d 910, 917 (5th Cir.1996).

**31.** *Hopper v. Safeguard Bus. Sys., Inc.*, 787 S.W.2d 624, 626 (Tex.App.-San Antonio 1990, no writ) (holding that failure to comply with Rule 683 is fatal even if issue was not raised in motion for consideration); *see also Permian Chem. Co. v. State*, 746 S.W.2d 873, 874 (Tex.App.-El Paso 1988, writ dism'd), *citing Arrechea v. Plantowsky*, 705 S.W.2d 186, 189 (Tex.App.-Houston [14th Dist.] 1985, no writ), and *University Interscholastic League v. Torres*, 616 S.W.2d 355, 358 (Tex.Civ.App.-San Antonio 1981, no writ).

**32.** *Henry Hope X–Ray Prods., Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1343 (9th Cir. 1982).

**33.** *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir.1998)(holding that incorporated document must be physically appended to order); *California v. Campbell*, 138 F.3d 772, 783 (9th Cir.1998)(holding that document may be incorporated if attached to the order); *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986) (holding that the order was valid because incorporated document was attached to order).

**34.** Tex. Prop.Code Ann. § 5.006(a) (Vernon 1984).

(3) the expertise, reputation, and ability of the attorney; and

(4) any other factor.[35]

Sharla Neill, attorney for the Brookhaven lot owners, testified that her law firm had expended $49,528.21 as reasonable attorneys' fees and $2,239.65 as costs. The bills for such services were admitted into evidence during the testimony of the Association's treasurer. The trial court later excluded Neill's testimony, but awarded attorneys' fees based upon judicial notice.

■ Musgrave argues that an award of attorneys' fees must be supported by expert testimony on the reasonableness of the fees, and absent such testimony, the trial court may not determine the proper amount of the award. Musgrave contends that the trial court may not take judicial notice of reasonable attorney's fees, since this is not an action under Chapter 38 of the Texas Civil Practice & Remedies Code which specifically provides for judicial notice of usual and customary attorney's fees. To support this argument, Musgrave relies upon cases which interpret the requirements for an award of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. This suit was brought under Section 5.006 of the Property Code, and no such requirement for expert testimony as to reasonableness of attorneys' fees is listed. The statute gives the trial court wide latitude in determining the amount of the award of attorney's fees. We will not disturb the trial court's award absent an abuse of discretion.[36]

■ The judgment in which the trial court awarded attorneys' fees recites that "[h]aving considered the evidence and the arguments, the Court finds and concludes that Plaintiffs are entitled to the relief hereinafter given." In the findings of fact filed by the trial court, the trial court stated that "$49,528.21 is a reasonable amount of attorneys' fees for the services rendered by Wynne & Wynne through the trial of this case, as determined by judicial notice." The trial court does not specify what it had taken judicial notice of in the awarding of attorneys' fees. This Court has found references in the record where the trial court took judicial notice of the case file.

Under the common law, a trial court could take judicial notice of records of its own court in a case concerning the same subject matter and between the same or practically the same parties.[37] We can find no authority that states that Texas Rule of Evidence 201 abrogates this holding. The trial court's file and the trial court's affiliation with the suit would provide the information necessary in considering the factors listed in Section 5.006 of the Property Code which the trial court must consider in awarding attorney's fees.

Musgrave complains that the trial judge could not take judicial notice of the hourly fee testified to by Sharla Neill.[38] However, the trial court excluded this testimony.

We recognize that Rule 201 of the Texas Rules of Evidence describes the procedure by which judicial notice may be taken. However, no complaint was lodged on appeal as to any procedural irregularities other than the assertion that the trial

**35.** Tex. Prop.Code Ann. § 5.006(b) (Vernon 1984).

**36.** *Fonmeadow Property Owners' Ass'n, Inc. v. Franklin*, 817 S.W.2d 104, 105 (Tex.App.-Houston [1st Dist.] 1991, no writ); *see also Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex.1990)(similar factors as listed in Property Code to be considered in awarding attorney's fees in Election Code dispute).

**37.** *Gardner v. Martin*, 162 Tex. 156, 345 S.W.2d 274 (1961).

**38.** The following exchange took place between the trial judge and the plaintiffs' attorney, Sharla Neill while she was testifying as a fact witness regarding attorneys' fees. The trial court later excluded Neill's testimony:
[Neill:] And we would ask the Court to find that $75 an hour for my time ... would be a reasonable amount.
[Court:] Very well.

court could not award fees based upon judicial notice.

Because the trial court does not specify what it had taken judicial notice of in awarding attorneys' fees, we must presume that the trial court simply took judicial notice of the facts which it is permitted to consider under Section 5.006 of the Property Code. Musgrave never asked the trial court to specify what it took judicial notice of in determining the amount of attorneys' fees.[39] We must now determine if the trial court abused its discretion in awarding $49,528.21 in fees through the judgment at trial.

In determining whether the trial court abused its discretion, we may look at the following factors:

1. The nature of the case; its difficulties, complexities and importance and the nature of the services required to be rendered by counsel; *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155, 160 (1945); *McFadden v. Bresler Malls, Inc.,* 526 S.W.2d 258 (Tex.Civ.App.-Austin 1975), *modified,* 548 S.W.2d 789 (Tex. Civ.App.-Austin 1977, no writ).

2. The amount of money involved, the client's interest at stake, and the amount of time devoted by the attorney in the benefit derived by the client; *Vaughn v. Gunter,* 458 S.W.2d 523, 528 (Tex.Civ. App.-Dallas 1970, writ ref'd n.r.e.); *McFadden v. Bresler Malls, Inc.,* 526 S.W.2d 258, 263 (Tex.Civ.App.-Austin 1975), *modified* 548 S.W.2d 789 (Tex.Civ. App.-Austin 1977, no writ).

3. The time necessarily spent by the attorney, the responsibility imposed upon counsel, and the skill and experience reasonably needed to perform the services; *Weatherly v. Longoria,* 292 S.W.2d 139, 141 (Tex.Civ.App.-San Antonio 1956, writ ref'd n.r.e.); *McFadden v. Bresler Malls, Inc.,* 526 S.W.2d 258, 264

(Tex.Civ.App.-Austin 1975), *modified* 548 S.W.2d 789 (Tex.Civ.App.-Austin 1977, no writ).

4. An appellate court has the authority in looking at the entire record to draw on the common knowledge of the justices of the court and their experience as lawyers and judges and to view the matter in the light of the testimony, the record and the amount in controversy. *Southland Life Ins. Co. v. Norton,* 5 S.W.2d 767, 769 (Tex. Com.App.1928, holding approved), remittitur ordered 9 S.W.2d 752, 753 (Tex.Civ.App.-Galveston 1928, no writ).

*Knopf v. Standard Fixtures Co.,* 581 S.W.2d 504, 507 (Tex.Civ.App.-Dallas 1979, no writ).

The clerk's record shows that the instant multi-party suit was filed in August 1994, and the trial court rendered its final judgment in September 1997. In the intervening three years, the parties moved for summary judgment, participated in extensive discovery, participated in mediation, noticed and took depositions, and participated in a three-day trial to the bench. Total damages awarded at the trial court level amounted to $49,420.97. Total attorneys' fees awarded through the trial of the case amounted to $49,528.21. Considering the record in this case, the amount in controversy, and the applicable law, we find that the finding of the trial court as to attorneys' fees was excessive. We believe that the Owners' attorneys overprepared for this case and Musgrave should not be held liable for the cost of overpreparing.[40] Consequently, if appellees, within fifteen days of the date of this opinion, file remittitur in this Court in the amount of $20,000 as to the attorneys' fees awarded through trial, we will reform the judgment and, as reformed, on this and other points of error, affirm the judgment.[41] Otherwise, the

---

39. *See* Tex.R. Civ. P. 298.

40. *Giles v. Cardenas,* 697 S.W.2d 422, 430 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.); *Argonaut Ins. Co. v. ABC Steel Prods. Co.,* 582

S.W.2d 883, 889 (Tex.Civ.App.-Texarkana 1979, writ ref'd n.r.e.).

41. Tex R.App. P. 46.3.

judgment insofar as it granted the injunction and awarded damages will be affirmed as reformed, but the issue of attorneys' fees through the trial of the case will be severed from the remainder of the case and the judgment, insofar as it granted attorneys' fees in the amount of $49,528.21 for legal services through the trial of the case, will be reversed and the issue remanded to the trial court for a new trial.

The court also specified that, in the event of an appeal to this Court, additional attorneys' fees of $20,000 would be warranted, and in the event of an appeal to the Texas Supreme Court, an additional $10,000 should be awarded to the Owners. Musgrave contends on appeal that such an award is improper because the award is not conditioned on a successful appeal by the Owners. Furthermore, Musgrave argues that there is no evidence to support the amount of fees awarded in the event of appeal.

A trial court's award of attorneys' fees may include appellate attorneys' fees, but it may not penalize a party for taking a successful appeal by taxing that party with attorneys' fees. Section 5.006 of the Property Code allows the recovery of attorneys' fees only to the prevailing party. An unconditional award of appellate attorneys' fees is improper, and the trial court must therefore condition the award of attorneys' fees to an appellee upon the appellant's unsuccessful appeal.[42] The failure of the trial court to condition the award of fees on the success of the prevailing party does not require a reversal of the judgment, but requires a reformation of the judgment to reflect that appellate fees are only awarded in the event that the prevailing party at trial also prevails on appeal.[43] We so reform the judgment to reflect that fees are only to be awarded to the prevailing party.

However, we find the amount of attorneys' fees awarded on appeal to be unreasonable. The appellate court has the duty to reduce the amount of attorneys' fees when excessive.[44] A reviewing court may look at the record and draw on the common knowledge of the court justices and their experience as lawyers and judges to view the matter in light of the testimony, the record, and the amount in controversy.[45]

Based upon our review of the entire record of this case, both trial and appeal, and based upon the common knowledge of the justices of this Court and their experience as lawyers and judges, we find that the trial court abused its discretion in awarding $20,000 in fees for an appeal to this Court and $10,000 for a further appeal to the Texas Supreme Court. Consequently, if the Owners file in this Court, within fifteen days from the date of this opinion, a remittitur of $10,000 from the award of $20,000 for the preparation of this appeal, and an additional $5,000 from the award of $10,000 in the event that there is an appeal to the Texas Supreme Court, we will reform the judgment and, as reformed on this and other points of error, affirm. Otherwise, the judgment of the trial court with respect to attorneys' fees will be reversed and remanded.

The judgment of the trial court is modified in part as to damages, due to the statute of limitations, so that damages are reduced from $49,420.97 to $24,449.47; the judgment is reversed in part as to the injunctive provision enjoining the imple-

**42.** *CPS Int'l, Inc. v. Harris & Westmoreland,* 784 S.W.2d 538, 544 (Tex.App.-Texarkana 1990, no writ), *citing Siegler v. Williams,* 658 S.W.2d 236 (Tex.App.-Houston [1st Dist.] 1983, no writ).

**43.** Tex.R.App. P. 43.3.

**44.** *Southland Life Ins. Co. v. Norton,* 5 S.W.2d 767 (Tex. Comm'n App.1928, holding approved); *see Knopf v. Standard Fixtures Co.,* 581 S.W.2d 504, 507 (Tex.Civ.App.Dallas 1979, no writ).

**45.** *Dalworth Trucking Co. v. Bulen,* 924 S.W.2d 728, 738 (Tex.App.-Texarkana 1996, no writ).

mentation of the forest resource management plan or similar plans, due to failure to comply with Rule 683, and this portion of the judgment is stricken. The award of attorneys' fees is reformed to show that such fees may only be awarded to the prevailing party. A remittitur of attorneys' fees through trial in the amount of $20,000, through appeal to this Court of $10,000, and $5,000 should appeal follow to the Texas Supreme Court is suggested. If the remittitur is made within fifteen days of issuance of this opinion, the attorneys' fees, as reduced, will be affirmed; if remittitur is not made within fifteen days, the judgment of the trial court with respect to attorneys' fees will be reversed and remanded. In all other aspects, the judgment of the trial court is affirmed.