**Earl HERRING and Florence Canales Herring, Appellants,**

v.

**Robert August BOCQUET, Phillip Edmund Bocquet, Malcolm Oscar Bocquet, and Blanche Eugenia Beechie, Appellees.**

No. 04–95–00858–CV.

Court of Appeals of Texas, San Antonio.

Jan. 12, 2000.

Dennis K. Drake, Charles Estee, Shannon, Drake & Estee, L.L.P., San Antonio, for appellant.

Gardner S. Kendrick, Cox & Smith Inc., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, CATHERINE STONE, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

This appeal involves a challenge by the appellants, the Herrings, to the amount of attorney's fees awarded the appellees, the Bocquets, in a declaratory judgment action. We originally held that the attorney's fees awarded through trial were excessive by $20,000 and affirmed on condition of remittitur. *Herring v. Bocquet,* 933 S.W.2d 611, 615–16 (Tex.App.—San Antonio 1996), *rev'd, Bocquet v. Herring,* 972 S.W.2d 19 (Tex.1998). The Texas Supreme Court granted writ and reconsidered the standard by which an award of attorney's fees in a declaratory judgment action is to be reviewed on appeal. *Bocquet,* 972 S.W.2d at 20. The Court held: "the Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Id.* at 21. The Court determined that the attorney's fees awarded the Bocquets were just and equitable, as a matter of law, and that there was some evidence to support the award. *Id.* The Court then reversed our original judgment and remanded the cause to us "to redetermine the factual sufficiency of the evidence of the reasonableness and necessity of the attorney fees awarded." *Id.* The Court noted that our determination should be made in light of the standards prescribed in Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct. *Id.* Upon the return of the case files, we permitted the parties to file supplemental briefs, and

we now consider the factual sufficiency of the evidence as directed by the Texas Supreme Court.[1]

## STANDARD OF REVIEW

■ In conducting a factual sufficiency review, an appeals court must consider and weigh all of the evidence, not just that evidence which supports the judgment. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). The judgment can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.; Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In conducting our review, we are mindful that it is for the trier of fact, not this court, to judge the credibility of the evidence, assign the weight to be given to testimony, and resolve conflicts or inconsistencies. *Perseus, Inc. v. Canody,* 995 S.W.2d 202, 205 (Tex.App.—San Antonio 1999, no pet. h.).

## APPLICATION OF RULE 1.04

Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct sets forth eight factors to be considered in determining the reasonableness of an attorney's fee. TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(b) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit.2, subtit. G app. (Vernon 1998) (State Bar Rules art. X, § 9). We will conduct our factual sufficiency review by considering the evidence as it relates to each of these factors.

*(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;*

Our original opinion focused on the fact that this case involved one issue that was resolved by summary judgment. In analyzing this first factor under a factual suffi-

---

1. Our reconsideration of this cause was delayed by an unexpected delay in the return of

the case files from the Texas Supreme Court.

ciency standard, however, we must be highly deferential to the trial court's assignment of the weight to be given the testimony of the various witnesses and their credibility. With regard to the novelty of the question, although the expert called by the Herrings testified that the issue was not novel or unique, there was testimony from several witnesses that the approach taken by the Herrings' attorney, Earl Cobb, made an otherwise simple issue complex. This approach included raising an illegal subdivision claim, contending other means of access existed, asserting condemnation as a means to obtain access, and asserting that the easement was not assignable.[2] Each of these issues required research in order for the Bocquets to make an informed response. As is true for this court, the more novel the approach, the more difficult the research can become.

The Bocquets' response to the Herrings' motion for summary judgment reflects the amount of time the attorneys took to file a detailed response addressing all of the Herrings' contentions. The exhibits to the response included deed record excerpts, affidavits of witnesses and experts, and pages from deposition transcripts.

Time and labor were also expended in an effort to mediate a resolution of the dispute. The Bocquets' motion for continuance also reflects efforts made at settlement. In addition, time was required in filing responses to the pleadings and amended pleadings filed by the Herrings. After the summary judgment was granted, the Herrings continued to file pleadings and evidence, which the Bocquets' attorneys were successful in having stricken as being untimely filed.

With regard to whether the two groups of defendants, the Bocquets and the Weyels, needed separate representation, the trial court heard testimony regarding the different approach taken by the Herrings' attorney regarding these two groups of defendants. The trial court also heard testimony regarding the conflict-of-interest concern that one attorney had in representing both groups of defendants. Although there were a number of conferences between the attorneys for the two groups and a number of internal conferences between the attorneys for the Bocquets, the Bocquets' lead attorney, Gardner S. Kendrick ("Kendrick"), explained that the conferences were necessary to discuss what the Herrings' attorney had pled and what should be filed in response. In addition, Kendrick stated that several of the conferences were necessary to relay information to the Weyels' attorney regarding issues Kendrick discussed with the Herrings' attorney. Kendrick further testified that efforts were coordinated with the Weyels' attorney where possible to reduce attorneys fees. Michael Sartori, an attorney with seventeen years experience who was called as an expert witness, also testified that the number of conferences was not unusual.

In addition to opposing the Herrings' interpretation of the easement, time was expended in developing other defensive theories, including waiver, estoppel, limitations, and ratification. Kendrick detailed the efforts made in developing the estoppel issue, including discussions with his clients and contacting other attorneys who were previously involved in the property's chain of title.

*(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;*

Kendrick testified that he was not required to turn away prospective clients.

---

2. This confused approach to a straightforward issue is also demonstrated by the Herrings' amended petition in which the Herrings contended that the Bocquets were not entitled to any attorney's fees. The amended petition asserts that: (1) the attorneys did not adequately represent their clients (even though they obtained a favorable judgment); (2) the attorneys engaged in a conspiracy; and (3) the attorneys engaged in deceptive trade practices and acted in bad faith, violating their professional responsibility.

*(3) the fee customarily charged in the locality for similar legal services;*

Kendrick testified that his fee was reasonable and proper in light of the fee customarily charged in the locality for similar legal services. In addition, Michael Sartori, the Bocquets' expert, testified that he was familiar with the normal and standard fees customarily charged in San Antonio, Bexar County, for the type of litigation involved, and that the fees and costs were reasonable and necessary.

*(4) the amount involved and the results obtained;*

The trial court heard testimony regarding the importance of the issue to the Bocquets. The Bocquets' ability to access their property was at stake. Sartori testified that each issue raised by the Herrings had to be diligently pursued to eliminate any possible risk of losing that access. The Bocquets were granted a summary judgment in their favor, which was upheld on appeal.

*(5) the time limitations imposed by the client or by the circumstances;*

There was no evidence of any time limitations.

*(6) the nature and length of the professional relationship with the client;*

This was the first case that the attorneys handled for the Bocquets. Given the importance of the issue, establishing a professional relationship with the Bocquets was likely contingent upon the attorneys' success.

*(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;*

Kendrick had thirty-one years experience in practicing law. He had been an officer and director of the San Antonio Bar

Association and held the highest Martindale–Hubble rating. The fee statements reflect that Kendrick delegated services to less-experienced attorneys where possible. Sartori, the Bocquets' expert, testified that Kendrick had an excellent reputation in the community.

*(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.*

The Bocquets were charged on a hourly basis.

### CONCLUSION

■ The clerk's record in this case is six volumes. The same trial judge who granted the attorney's fee award presided over all of the hearings, including the two-day evidentiary hearing resulting in the attorney's fee award.[3] In announcing his ruling, the trial judge found that the separate representation of the two groups of defendants was warranted. He also found that the lawsuit "was a little strange to say the least," noting that the issue was simple to start with but resulted in the attorney's fees being incurred as the "process started rolling." The trial judge did not ignore the Herrings' complaints regarding the inordinate amount of conferences and possible duplicative efforts, estimating that this resulted in an excess of $10,000–$12,000. As a result, the trial judge reduced the amount of attorney's fees requested by $10,000, awarding the Bocquets' attorneys $50,000 through trial. Deferring to the trial judge's resolution of conflicts in the evidence, we are unable to conclude that the award is so contrary to the overwhelming weight of the evidence as to be clearly

---

**3.** The Herrings cite *Musgrave v. Brookhaven Lake Property Owners Association,* 990 S.W.2d 386 (Tex.App.—Texarkana 1999, pet. denied), as support for their position. In *Musgrave,* there was no separate evidentiary hearing on the issue of attorney's fees, no expert testimony regarding the reasonableness and necessity

of those fees was considered, and the testimony of the attorney for the party seeking the fees was stricken. *See id.* at 401–03. The evidence relating to the rule 1.04 factors in this case is vastly different than the evidence presented in *Musgrave.*

wrong and unjust. The trial court's judgment is affirmed.

Concurring opinion by: TOM RICKHOFF, Justice.

TOM RICKHOFF, Justice, concurring.

I now agree that the attorney's fees awarded in this declaratory judgment action were equitable and just when reviewed under an abuse of discretion standard and were reasonable and necessary when reviewed under the factual sufficiency standard. But I also believe, as I did when we attempted an equitable adjustment in our earlier opinion, that the full payment of the fees falls inequitably upon the Herrings. This simple ingress/egress easement dispute was tortured into a nonsensical Dickensian nightmare by the Herrings' attorney, Earl Cobb.[1] All the confusion and most of the resulting needless energy and years of litigation were generated by Mr. Cobb's bizarre concept that people could build and maintain a road they could not use. It is true that the Herrings hired Mr. Cobb and continued the litigation. But it seems inequitable to require these litigants to pay twice for their lawyer's mistakes. I believe this case is similar to criminal cases in which the parties, who find the legal issues somewhat beyond their full comprehension, inordinately suffer the consequences of a problem that exists within our institutions and that should be subject to an institutional solution.[2]

---

1. "[*Herring v. Bocquet*] drones on. This scarecrow of a suit has, in course of time, gotten so complicated that no man alive knows what it means. The parties to it understand it least...." CHARLES DICKENS, BLEAK HOUSE 52 (Penguin classics ed.1971).

2. *See, e.g., Bone v. State*, 12 S.W.3d 521 (Tex. App.—San Antonio 1999, pet. filed); *Mitchell v. State*, 974 S.W.2d 161 (Tex.App.—San Antonio 1998), *vacated*, 989 S.W.2d 747 (Tex. Crim.App.1999).