In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00070-CR


______________________________




NOLEN EDWIN KIRKPATRICK, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 18913-2005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Nolen Edwin Kirkpatrick has appealed from his jury conviction of aggravated assault with
a deadly weapon (habitual). See Tex. Penal Code Ann. §§ 12.42, 22.02 (Vernon Supp. 2006). The
jury assessed a punishment of twenty-five years' imprisonment, to run concurrently with sentences
in three companion cases tried at the same time and on which appeals have also been filed. 
Kirkpatrick was represented by Douglas Parks at trial. Kirkpatrick's first counsel on appeal was Jim
Wheeler; Larry P. King was then appointed as counsel on appeal. 

 Appellate counsel filed a brief November 6, 2006, under the mandate of Anders v. California,
386 U.S. 738 (1967), and Ex parte Senna, 606 S.W.2d 329, 330 (Tex. Crim. App. 1980), and has
accordingly also filed a motion to withdraw. Counsel sent Kirkpatrick a copy of the brief and
advised Kirkpatrick by letter he believes there are no arguable contentions of error. He also
informed Kirkpatrick of his right to review the record and file a pro se response. Kirkpatrick
requested an extension of time to file his response, but that time has now passed and no response has
been filed. Kirkpatrick has not requested additional time in which to file the response.

 Counsel has filed a brief, which discusses the record and reviews the proceedings. Counsel
has thus provided a professional evaluation of the record demonstrating why, in effect, there are no
arguable grounds to be advanced, as required by High v. State, 573 S.W.2d 807, 812 (Tex. Crim.
App. [Panel Op.] 1978). See also Stafford v. State, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App.
1991). Counsel concluded from his review of the record there is no arguable point of error to
support the appeal. 

 We have, likewise, reviewed the record and agree with counsel that there are no arguable
points of error in this case. (1)

 We affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 26, 2007

Date Decided: February 28, 2007


Do Not Publish

1. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Kirkpatrick in this case. No
substitute counsel will be appointed. Should Kirkpatrick wish to seek further review of this case by
the Texas Court of Criminal Appeals, Kirkpatrick must either retain an attorney to file a petition for
discretionary review or Kirkpatrick must file a pro se petition for discretionary review. Any petition
for discretionary review must be filed within thirty days from the date of either this opinion or the
last timely motion for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any
petition for discretionary review must be filed with this Court, after which it will be forwarded to
the Texas Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App.
P. 68.3. Any petition for discretionary review should comply with the requirements of Rule 68.4 of
the Texas Rules of Appellate Procedure.


span style="font-family: 'Times New Roman', serif">Harris County, Texas
Trial Court No. 2001-17231


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Mary Lee Anderson, a property owner in the Newport Subdivison in Crosby, Texas, appeals
the trial court's judgment in favor of the New Property Owners' Association of Newport, Inc.
(hereinafter "NPOAN"), challenging the trial court's conclusions of law that NPOAN had the
authority to enforce deed restrictions in one certain section of the subdivision. She contends the trial
court erred as a matter of law in concluding that NPOAN had the authority to reject her driveway
plans, in failing to dismiss the suit for lack of standing or capacity, in ordering her to remove the
driveway and restore her property, and in awarding attorneys' fees in favor of the prevailing NPOAN.
I.         Factual and Procedural History
            A.        Development of and Restrictions in Newport Subdivision
            The Diamondhead Corporation, now known as Purcell Company, Inc., began development
in the 1970s of the Newport Subdivision in Crosby, Harris County, Texas, and, in 1979, filed deed
restrictions binding on all lots in the subdivision (hereinafter "Declarations"). Currently,
approximately 1,900 homes occupy fourteen sections of the subdivision. The Declarations for
Section Eight created Newport Section Eight Property Owners, Inc. (hereinafter "Section Eight
Owners' Ass'n"), and gave it the power to collect association dues and assessments. The instrument
also created the Architectural Approval Control Committee (hereinafter "AC") and the Newport
Yacht and Country Club, Inc. The AC was given the right to disapprove any plans and specifications
submitted to it for construction or improvements in Section Eight, and was given the authority to
make additional regulations regarding, among other things, "such surfaces, projections and
appendages as will visibly affect the appearance of said buildings and structures." The AC was given
very broad discretion in determining whether a structure or improvement would be "contrary to the
interest, welfare or rights of all or any part of the owners of the lots, tracts or parcels adjacent
thereto," and its decision was deemed final. Article III, creating the AC, addresses procedures to fill
vacancies in the AC, but does not speak to the dissolution of the AC or when the authority
specifically given to the AC would transfer to another entity.
            The Declarations for Section Eight authorize changes to the restrictions, effective on
recordation of an instrument "setting forth such annulment, amendment or modification" and
executed by seventy-five percent of the record owners of the property within the particular section. 
On October 2, 2001, pursuant to this procedure,


 an amendment to the original restrictions applicable
to Section Eight was recorded in the Harris County Property Records (hereinafter "Amendment to
Declarations"). 
            This amendment gave authority to manage Section Eight, including the authority to enforce
deed restrictions, to the New Property Owners' Association of Newport. NPOAN was an
organization, created by a group of Newport homeowners in 1996, to place control and operation into
the hands of the owners and residents, replacing the organization that had been set in place by the
original 1979 Declarations. 
            B.        Transfers of Ownership of Newport Property 
            In 1991, Diamondhead (Purcell Co.) sold its undeveloped lots to Albert Bacarisse, trustee
for an unnamed entity, specifically subject to existing restrictions. The property was then sold to
Newport Partners, Inc., also subject to then-existing restrictions. 
            In 1997, Newport Partners declared bankruptcy. NPOAN had been involved in litigation
with Newport Partners, and NPOAN's claims were settled in the bankruptcy proceedings when, in
1998, as part of the liquidation proceedings, the trial court ordered the sale of the remaining
undeveloped property to Rampart Properties Corporation (hereinafter "Rampart"). In this sale,
Rampart purchased the real property, together with all rights, if any, located in the Newport
subdivision. Then, as part of the resolution of NPOAN's claims, Rampart and NPOAN entered into
an agreement in which Rampart assigned to NPOAN certain rights with respect to the property
(hereinafter "the 1999 Assignment"). 
            C.        Driveway Construction and Approval Process
            In 1990, Mary Lee Anderson and her former husband purchased two adjoining pieces of real
property to use as a single home site in Section Eight of the Newport Subdivision. In 1991,
Anderson and her husband applied to the Section Eight Owners' Association for permission to build
a U-shaped driveway. The AC approved the driveway plans. Marital difficulties postponed the
construction of the driveway.
            On June 30, 2000, Anderson filed a second application with CIA Services, a company
managing the subdivision on behalf of NPOAN. NPOAN claims it rejected her application due to
a lack of information. Anderson claims she never received notice of denial and, therefore, acted
pursuant to Article III of the Declarations, which deemed the plans were approved if the AC did not
act on them within thirty days of submission. In March 2001, after having received appropriate
permits from Harris County, Anderson began construction of the driveway. 
            On March 27, Anderson received a letter from NPOAN's attorney, directing Anderson to
cease construction immediately because she lacked approval from the Architectural Control
Committee of NPOAN. In response, on that same day, Anderson submitted a second request for
approval through CIA Services. A letter dated March 29, 2001, denied Anderson's request for
approval of the U-shaped driveway construction. The letter offered no reason for the denial of
Anderson's request.
            Despite the letter of denial, Anderson resumed construction and, on March 30, 2001, NPOAN
instituted this suit, seeking a temporary restraining order and injunction to stop construction. 
NPOAN's request for an injunction was denied on April 30, and a second request was also denied
on December 3. Rampart, Newport Fund, L.L.C., and Newport Development Joint Venture
intervened in the matter.
            D. Bench Trial 
            NPOAN filed suit as a Texas nonprofit corporation composed of persons who reside and own
homes in the Newport Subdivision. Anderson entered a verified denial challenging NPOAN's
standing and capacity. A trial to the court began on January 29, 2002. The trial court's judgment
ordered Anderson to remove the driveway, restore the property, and awarded NPOAN attorneys' fees. 
On July 18, 2002, the trial court entered findings of fact and conclusions of law. Anderson now
brings forth points of error challenging several of the trial court's conclusions of law.
II.       Preservation of Error
            Anderson filed a verified denial in which she challenged NPOAN's standing and capacity to
bring this suit. This pleading was sufficient to preserve error as to both issues. It was necessary that
Anderson file such a challenge with the trial court in order to preserve for review the issue of
NPOAN's capacity to sue. See Tex. R. Civ. P. 93(1). However, even if Anderson had not filed the
verified pleading challenging NPOAN's standing, we could properly decide the issue. Standing is
a component of subject matter jurisdiction; it cannot be waived and may be raised for the first time
on appeal. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440 (Tex. 1993) (overruling Tex.
Indus. Traffic League v. R.R. Comm'n, 633 S.W.2d 821, 822-23 (Tex. 1982) (per curiam)); Musgrave
v. Brookhaven Lake Prop. Owners Ass'n, 990 S.W.2d 386, 393 (Tex. App.‒Texarkana 1999, pet.
denied). We hold that both issues of standing and capacity are properly before us.
            As to her other points of error regarding the trial court's conclusions of law, Anderson
properly preserved error with her timely motion for new trial, which was denied by written order,
complaining of the trial court's conclusions. See McClary v. Thompson, 65 S.W.3d 829, 833 (Tex.
App.‒Fort Worth 2002, pet. denied). Therefore, the issues presented by Anderson's points of error
are properly before this Court. See Tex. R. App. P. 33.1. 
III.      Standard and Scope of Review
            A trial court's conclusions of law cannot be challenged for factual insufficiency, but may be
reviewed for correctness. First Nat'l Bank v. Kinabrew, 589 S.W.2d 137, 146 (Tex. Civ. App.–Tyler
1979, writ ref'd n.r.e.). We will not disturb a conclusion of law unless it is erroneous as a matter of
law. Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.–Austin
1992, no writ). We review conclusions of law under a de novo standard. Richardson Indep. Sch.
Dist. v. GE Capital Corp., 58 S.W.3d 290, 293 (Tex. App.–Dallas 2001, no pet.). Specifically, a trial
court's conclusions regarding standing and capacity are questions of law. See Mayhew v. Town of
Sunnyvale, 964 S.W.2d 922, 928-29 (Tex. 1998). Standing is determined at the time suit is filed in
the trial court, and subsequent events do not deprive the court of subject matter jurisdiction. Tex.
Ass'n of Bus., 852 S.W.2d at 445-46.
IV.      Analysis
            A.        NPOAN's Standing to Bring Cause of Action
            Since standing is a threshold question, we will first address that issue. See Exxon Corp. v.
Pluff, 94 S.W.3d 22, 26 (Tex. App.–Tyler 2002, pet. denied). Standing is a necessary component
of subject matter jurisdiction. Tex. Ass'n of Bus., 852 S.W.2d at 445-46. It is fundamental that only
the entity whose primary legal right has been breached may seek redress for an injury. Nobles v.
Marcus, 533 S.W.2d 923, 927 (Tex. 1976). Without a breach of a legal right belonging to a plaintiff,
that plaintiff has no standing to litigate. Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex. App.–Fort
Worth 2001, no pet.). Relying on these principles, Anderson argues NPOAN lacked standing to sue
to enjoin her from constructing the driveway.
            An association has standing to sue when it satisfies a three-pronged test. See Tex. Ass'n of
Bus., 852 S.W.2d at 447. First, the members must otherwise have standing to sue in their own right. 
Id. Second, the interests it seeks to protect must be germane to the organization's purpose. Id. 
Finally, neither the claim asserted nor the relief requested may require the participation of individual
members in the lawsuit. Id.
            Ordinarily, any person entitled to benefit under a restrictive covenant may enforce it. See
Calvary Temple v. Taylor, 288 S.W.2d 868, 872-73 (Tex. Civ. App.–Galveston 1956, no writ). This
means that, generally, an interested property owner may enforce a restrictive covenant. Giles v.
Cardenas, 697 S.W.2d 422, 427 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.). In its petition,
NPOAN alleges it is a nonprofit Texas corporation whose members consist of residents and owners
of property in the Newport Subdivision. NPOAN members, as property owners, would have
standing to bring this suit to enforce deed restrictions. NPOAN satisfies the first requirement for
standing as an association.
            Also, since NPOAN's purpose is aligned with that of its members, it satisfies the second
prong of the test. In its articles of incorporation, NPOAN states its purpose is to: 
[D]evote itself to the civic betterment of social improvement of the Newport property
development in Harris County, Texas, and to the maintenance, operation, acquisition
and ownership of the common areas and recreational facilities within the Newport
subdivision, and to engage in any other activity permitted by law which may be
useful in accomplishing any of the foregoing, with the best interests of the residents
of Newport to be its primary consideration. 
NPOAN's members certainly have an interest in the civic betterment and social improvement of life
in their neighborhood. Applying the terms in a broad sense, we conclude that such a purpose could
include protection of the property owners' interests in maintaining an aesthetically pleasing and well-defined appearance.
            Further, the claim NPOAN asserts and the relief it requests do not require the participation
of any individual members. When, as here, an association seeks declaratory or injunctive relief, it
is reasonable to suppose that the relief sought will inure to the benefit of the injured members. See
Tex. Ass'n of Bus., 852 S.W.2d at 448. Granting of the relief NPOAN sought will not require proof
of any of the association members' circumstances. We hold that NPOAN, as an association, did
hold, through its members, an interest which was allegedly violated by Anderson's construction of
the driveway, establishing standing to bring suit for the violation. 
            We must now determine whether NPOAN sued Anderson in the proper capacity. In order
to determine this issue, we need to examine the possible sources of the authority NPOAN exercised. 
To affirm the trial court's conclusion that NPOAN had capacity, we must determine that NPOAN
had authority to bring this cause of action. See Nobles, 533 S.W.2d at 927.
            B.        NPOAN's Capacity to Sue
                        1.         As Provided in the Declarations for Section Eight
            Article II of the Declarations provides a list of entities who shall have authority to enforce
the restrictive covenants:
NOW THEREFORE, the Corporation being the sole owner of the property
known as NEWPORT, SECTION EIGHT, a subdivision in Harris County, Texas,
according to the Map hereinabove described, does hereby impose the following
restrictions, covenants, and liens upon NEWPORT, SECTION EIGHT, which shall
inure to the benefit of the Corporation, its successors and assigns and to each and
every purchaser of lands in NEWPORT, SECTION EIGHT, and their heirs,
successors and assigns and to the Architectural Committee, which is hereinafter
designated, its successors and assigns, and to Newport Yacht and Country Club, Inc.,
its successors and assigns, and any one of said beneficiaries shall have the right to
enforce such restrictions, covenants and liens using whatever legal method is deemed
advisable, including without limitation, injunctive relief; . . . .

(Emphasis added.) The Declarations also provide a procedure whereby Section Eight could amend
or modify the restrictions and covenants of the original Declarations:
(B) Any one or more of the restrictions, covenants and liens herein contained
may be annulled, amended or modified at any time by, but shall be deemed to have
been annulled, amended or modified only upon, the recordation of an instrument in
writing setting forth such annulment, amendment or modification and executed by
the then record owner or owners (as shown by the Official Public Records of Real
Property of Harris County, Texas, at the time of the filing of such instrument) of
seventy-five (75%) percent of the real property comprising NEWPORT, SECTION
EIGHT, (computed upon a square foot basis).

            On March 30, 2001, when NPOAN filed suit, neither provision of the Declarations gave it
the authority to enforce deed restrictions. It was not a party specifically given such authority. 
Further, the record establishes that the amendment procedure was not complete until October 2001,
when the amendments to the Declarations for Section Eight were recorded.
                        2.         By Assignment from Rampart
            Next, we look to the 1999 Assignment to determine whether Rampart assigned to NPOAN
the authority to bring this suit. Contract construction is a question of law and one we will review
de novo. Buys v. Buys, 924 S.W.2d 369, 372 (Tex. 1996). When construing the agreement, a court's
primary concern is to ascertain and give effect to the parties' intentions as expressed in the
agreement. R & P Enters. v. LaGuarta, Gavrel & Kirk, 596 S.W.2d 517, 518 (Tex. 1980). To
ascertain the intent of the parties, we must examine the entire instrument and give effect to all the
provisions so that none will be rendered meaningless. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). No single provision, when read alone, should control. Id.
            As an assignee of Newport Partners, Article II of the Declarations specifically gives Rampart
the authority to enforce deed restrictions. We turn to the 1999 Assignment to determine if Rampart
assigned to NPOAN such a power. As mentioned, the purpose of the 1999 Assignment was to
document the terms and conditions of the agreement of the parties concerning the settlement of the
claims against Newport Partners and to transfer certain rights and obligations of the parties to
NPOAN as part of a settlement. The Assignment provides:
1. Assignment of Fees, Dues and Assessments. Subject to the reservation of certain
rights set forth herein and subject to applicable laws, rules and regulations, Rampart
hereby grants and assigns to NPOAN its rights to assess and collect all future
monthly maintenance charges, fees, dues and assessments, arising or accruing
after the date hereof, as provided in the applicable restrictive covenants and
other subdivision documents governing the entire Newport subdivision
("Newport") an exhibit map of which is attached hereto as Exhibit "A" (the "Newport
Plat"). Any monthly maintenance charges, fees, dues or assessments relating to use
of the golf course or club house facilities, located within Newport or any other public
or private facilities which are or may in the future be located on real property within
Newport on real property presently owned by Rampart, are excluded from this
provision and are retained by Rampart. NPOAN agrees and acknowledges that the
assignment to assess and collect future monthly maintenance charges, fees, dues
and assessments set forth in this paragraph 1, is limited to any rights Rampart
may have to collect future monthly maintenance charges, fees, dues and assessments,
if any.

                        . . . .
 
4. Assumption of Obligations. NPOAN hereby assumes all obligations,
responsibilities and duties of Rampart as assigned by the Trustee, in connection
with the security, improvement, maintenance, beautification and other matters
relating to the daily operation of the common areas of the Subdivision. In this
regard, NPOAN agrees to operate and maintain Newport as a first class subdivision
in the suburban Houston, Texas market place. Without in any way limiting the
generality of the foregoing, NPOAN agrees to spend up to $150,000 as soon as is
reasonably possible, to improve, upgrade, maintain and bring into good operating
status and condition, the following items:

                        . . . .
 
5. Indemnification. The NPOAN hereby unconditionally and irrevocably, agrees to
indemnify, defend and hold harmless Rampart and Rampart's officers, directors,
employees, agents and contractors (collectively the "Rampart Parties" and
individually a "Rampart Party") from and against any and [sic] Losses (as hereinafter
defined) which Rampart may suffer or incur as a result of any demand, lawsuit or
claim ("Claim") asserted against Rampart and / or any Rampart [sic] by any other
person or entity for any of the obligations of the NPOAN described in Paragraph 4
arising out of or relating to any act or omission of NPOAN, its officers, employees,
agents, contractors, (whether occurring in the past, present or future) including,
without limitation, a Claim arising out of or related in any way to (i) restrictive
covenants, (ii) any approval or rejection of lot owner's plans and specifications
for improvements, (iii) any interpretation or enforcement of the restrictive
covenants, or (iv) any collection or enforcement actions hereunder or under the
restrictive covenants.

(Emphasis added.) Anderson points to the absence in paragraph one of any language relating to
enforcement of deed restrictions or AC authority and to the "in connection with" language of
paragraph four and argues that the unambiguous language did not convey any authority with respect
to enforcement of the nonconforming deed use restrictions. NPOAN's reading focuses on the
"generality" language and also interprets the provision in light of paragraph five. NPOAN contends
the Assignment could only obligate NPOAN to indemnify Rampart for activities NPOAN was
authorized to undertake, which, according to the specific reference in paragraph five, includes the
power to approve, reject, or interpret restrictive covenants.
            Language in the Assignment does not sufficiently support the conclusion that Rampart
assigned to NPOAN the right to sue in its own right to enforce deed restrictions. Clearly, paragraph
five, addressing only the issue of indemnity, mentions the right to enforce restrictions, but this
provision does not indicate a clear intention to convey these rights to NPOAN. Paragraph one is the
provision that assigns rights to NPOAN, and it is completely silent as to the authority to enforce deed
restrictions. Additionally, paragraph four, the provision through which NPOAN assumes any rights,
does not mention the right to enforce deed restrictions. A reading of the instrument as a whole fails
to indicate Rampart's intent to convey to NPOAN its right to enforce deed restrictions.
                        2.         As provided in the Texas Property Code
            NPOAN also contends the Texas Property Code confers on it the capacity to enforce deed
restrictions in a subdivision. NPOAN relies on our opinion in Musgrave to assert that NPOAN has
capacity to sue under Section 202.004(b) of the Texas Property Code. That provision provides:
(b) A property owners' association or other representative designated by
an owner of real property may initiate, defend, or intervene in litigation or an
administrative proceeding affecting the enforcement of a restrictive covenant or the
protection, preservation, or operation of the property covered by the dedicatory
instrument.

Tex. Prop. Code Ann. § 202.004(b) (Vernon 1995) (emphasis added).
            Here, the record shows that Section Eight did not designate NPOAN as the property owners'
association for that section until October of 2001, well after NPOAN instigated this suit. However,
under Section 202.004(b), NPOAN need not be the property owners' association for Section Eight
in order to bring this cause of action on behalf of other property owners. In this vein, NPOAN
argues that Section 202.004 provides no procedure in order to designate a representative and that,
therefore, an oral designation would suffice to designate NPOAN as the property owners'
representative. 
            We conclude that, while Section Eight did not designate NPOAN as its property owners'
association until October 2001 when the Amendments to Declarations were filed in Harris County
records, property owners in the Newport Subdivision could designate NPOAN as a representative
association under Section 202.004(b) of the Texas Property Code. See Musgrave, 990 S.W.2d at
394.


 Eileen Fashoro, vice president of Rampart, testified that Rampart assigned to NPOAN the
authority to enforce deed restrictions. While this testimony cannot support the conclusion, contrary
to the written assignment, that Rampart assigned certain rights to NPOAN, it does indicate that
Rampart, an owner of Section Eight property, designated NPOAN to sue on Rampart's behalf. That
being the case, NPOAN could sue in its representative capacity to enforce deed restrictions in
Section Eight in March 2001.
            C.        NPOAN'S Exercise of Authority
            We have determined that NPOAN had both standing and capacity to bring this suit against
Anderson. Now, we are left to assess the action NPOAN took with respect to the driveway plans. 
The trial court concluded that, "Rampart assigned to NPOAN full power and authority to carry out
all other terms and conditions of the declarations covering the Newport Subdivision including,
without limitation, the enforcement of deed restrictions and approval required by the Architectural
Control Committee." 
            By rejecting plans for construction of the driveway, NPOAN exercised architectural control
authority, which the Declarations conferred on the AC. The Texas Property Code provides a
standard for reviewing such an exercise of discretionary authority:
(a) An exercise of discretionary authority by a property owners' association
or other representative designated by an owner of real property concerning a
restrictive covenant is presumed reasonable unless the court determines by a
preponderance of the evidence that the exercise of discretionary authority was
arbitrary, capricious, or discriminatory.

Tex. Prop. Code Ann. § 202.004 (Vernon 1995). 
            Anderson challenges NPOAN's authority to reject her plans for construction. An appellate
court has the duty to independently evaluate the trial court's findings on the law. Pearce v. Pearce,
824 S.W.2d 195, 199 (Tex. App.‒El Paso 1991, writ denied). So, we will examine the sources from
which NPOAN may have received this discretionary authority. 
                        1.         Assignment from Rampart
            In much the same way that the Assignment fails to convey to NPOAN the right to act as
property owners' association, it, too, fails to convey to NPOAN the right to reject plans for
improvement to property in Section Eight. Looking again at the language of the Assignment, we see
that paragraph five mentions the right to approve or reject. However, paragraph four, the provision
in which NPOAN assumes rights, does not address these rights. Therefore, we conclude the
instrument does not establish a clear intent on the part of Rampart to transfer to NPOAN the rights
of an architectural control committee. That being so, NPOAN did not have the authority by way of
the Assignment to reject Anderson's construction plans.
                        2.         Automatic Vesting under Texas Property Code
            The Texas Property Code provides for automatic vesting of an architectural control
committee's authority to approve or deny applications for construction or modification of structures
or improvements in a property owners' association on the occurrence of specified events. Tex. Prop.
Code Ann. § 204.011(b) (Vernon Supp. 2003). An architectural control committee's authority,
given to it by the original restrictions, will vest in the property owners' association when (1) the term
of the architectural control committee authority expires as prescribed by the restrictions; (2) a
residence on the last available building site is completed and sold; (3) the person or entity designated
as the architectural control committee in the restrictions assigns, in writing, authority to the
association; or (4) an assignee of the original holder abandons its authority for more than one year. 
Id. The pertinent provision is subparagraph four, regarding the abandonment of the original AC for
over one year. Since there is evidence NPOAN had been exercising authority since 1996, we need
to address the application of this provision.


 
            Here, the record does not reflect that the original AC dissolved or that any other conditions
were met in order for such authority to vest automatically in NPOAN. Further, as established,
NPOAN was not the acting property owners' association at the time of suit. Therefore, we cannot
say the Texas Property Code confers any right on NPOAN to approve or reject any improvements
proposed by property owners in Section Eight.
            The trial court's conclusion that NPOAN had the authority to approve or reject lot owners'
plans for improvements in Section Eight is incorrect as a matter of law. The evidence before us
establishes that NPOAN did not have authority to act as property owners' association or as an
architectural control committee in Section Eight. Rejecting Anderson's driveway plans without
having established authority to approve or reject plans for improvements in Section Eight represents
an arbitrary and capricious exercise of discretionary authority.
            Having concluded that NPOAN had standing to maintain this suit and capacity to sue on
behalf of Rampart but acted without authority as an architectural control committee in Section Eight,
we must address a further consideration. The original Declarations made it a violation of the deed
restrictions to make certain improvements without approval of the original AC. NPOAN argues that,
since it could sue to enforce deed restrictions, it could enforce this restriction against Anderson and
require her to remove the unapproved driveway. However, the record does not show Anderson
constructed the driveway contrary to the decision of a valid, active architectural control committee
authorized to act in Section Eight. Therefore, we cannot say she violated a deed restriction in this
manner. NPOAN, thus, cannot avail itself of such a position. 
            D.        Order to Remove Driveway
            The granting or denial of a permanent injunction is within the trial court's sound discretion,
and a reviewing court's inquiry is limited to the question of whether the trial court abused its
discretion. Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n, 25 S.W.3d 845, 848 (Tex.
App.‒Houston [14th Dist.] 2000, pet. denied); Priest v. Tex. Animal Health Comm'n, 780 S.W.2d
874, 875 (Tex. App.‒Dallas 1989, no writ). The trial court abuses its discretion when it misapplies
the law to the established facts or when the evidence does not reasonably support the conclusion that
the applicant has a right of recovery. Musgrave, 990 S.W.2d at 398. Here, the order granting
injunctive relief was based on a misapplication of the law, thus constituting an abuse of discretion.
            E.        Attorneys' Fees
            The Texas Property Code mandates that a court allow reasonable attorney's fees to a party
who prevails in an action based on a breach of a restrictive covenant pertaining to real property. 
Tex. Prop. Code Ann. § 5.006 (Vernon 1984). Since NPOAN was without authority to reject
Anderson's plans for construction of the driveway, she should have prevailed at trial. She is, then,
entitled to attorneys' fees. See Jim Rutherford Invs., Inc., 25 S.W.3d at 848.
V.        Conclusion
            We conclude that, although NPOAN did possess standing and capacity to sue Anderson for
violation of deed restrictions, it did not possess a right to deny Anderson's plans for improvement
to the property. NPOAN was not authorized to exercise architectural control authority in Section
Eight at the time Anderson constructed her driveway, and it did not show the construction was
otherwise contrary to an action of an architectural control committee acting with authority in Section
Eight. Therefore, NPOAN's rejection of Anderson's plans and its suit to remove the driveway
represents an arbitrary and capricious act. The trial court's conclusions of law that conclude
otherwise are incorrect as a matter of law. Accordingly, we reverse the judgment of the trial court,
set aside the injunction, render judgment in favor of Anderson, and remand the case for assessment
of attorneys' fees to be awarded in favor of Anderson.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          August 28, 2003
Date Decided:             October 24, 2003